Marion A. LOVE & Wilma Love,
Plaintiffs-Respondents,

v.

DEERE & COMPANY, John
Deere Company,

and

Louisiana Farm Supply Company, Inc.,
Defendants-Appellants.

No. WD 38152.

Missouri Court of Appeals,
Western District.

Dec. 9, 1986.

Daniel M. Dibble, Thomas S. Stewart, Lathrop Koontz & Norquist, Kansas City, for Deere & Co.—John Deere Co.

Fred Wilkins, Stephen M. Millin, Kansas City, for plaintiffs-respondents.

Before GAITAN, P.J., and DIXON, and TURNAGE, JJ.

TURNAGE, Judge.

Marion A. Love and Wilma Love, his wife, brought this products liability suit against Deere & Company, John Deere Company, and Louisiana Farm Supply Company, Inc. for injury suffered by Marion while operating a combine manufactured by Deere and Company and sold by John Deere Company and Louisiana Farm Supply Company.[1]

The jury returned a verdict in favor of Marion in the amount of $100,000. The case was tried before the decision in *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491 (Mo. banc 1986), and the court instructed the jury using comparative fault instructions and submitting the issue of contributory negligence. The jury assessed Love's fault at 90 percent. All of the defendants were found to be at fault to the extent of 10 percent. The jury returned a verdict in favor of Wilma and assessed her damages at $25,000. The court entered judgment for Marion for $7,500 and for Wilma for $2,500 after deducting from Marion's verdict the amount of the settlement paid by Hobbs and reducing the verdicts by the percentage of fault assigned to Marion.

The Loves filed a motion for judgment notwithstanding the verdict for the full amount of the verdicts or, in the alternative, for a new trial. The court overruled the motion for judgment N.O.V., but granted a new trial for error in giving a contributory negligence instruction.

Deere and John Deere appealed and filed their brief in this court. One day later the Supreme Court decided *Lippard v. Houd-*

*aille Industries, Inc.,* The Loves filed their brief, and the Deere defendants filed a reply brief in which they asserted that their original brief was moot because of the decision in *Lippard.*

Deere and John Deere now contend this court should enter judgment in their favor, but failing that, should remand the case for a new trial. The Loves contend this court should enter judgment in their favor in the amount of the verdicts undiminished by any percentage of fault. Judgment granting a new trial affirmed.

This is the second appeal in this case. The first appeal is reported at 684 S.W.2d 70 (Mo.App.1985). On the first appeal this court decided that Love made a submissible case based on defects in the design of the combine, involving a part of the combine known as the "banana shield". The banana shield had fallen off the combine, exposing the belts and pulleys on the left side of the combine, near the ladder leading up to the cab; Love's hand became entangled in the moving parts thus exposed and his hand was amputated.

The evidence in this trial was very similar to the evidence set out in the decision of the prior appeal. Love had hired Hobbs to combine about 100 acres of soybeans, which Love was raising on a share-crop basis on rented land. On October 11, 1979 Hobbs had started combining, but had to quit in the afternoon because of other commitments. Love had agreed with Hobbs that Love would operate the combine after Hobbs left. The banana shield had already fallen off the combine before Love began operating the combine.

Love began operating the combine at about 5:30 in the afternoon. There was evidence that the combine would clog occasionally, which meant the combine would stop its essential operation of separating the beans from the stalks, even though the combine would continue to travel across the field. After Love had operated the

1. Originally Jack Hobbs, the owner of the combine at the time of the accident, was named as defendant, but the Loves settled with Hobbs.

combine for about two and one-half hours, the machine became clogged. Love dismounted from the cab, went around to the right side, and removed the cause of the clogging without incident. Love continued operating the combine, and was operating the combine at about 10:00 p.m., when the combine again became clogged. Love again dismounted from the combine, went around to the right side, and lifted a plate to determine the cause of the clogging. He stated that, because of the hour, he immediately replaced the plate and decided to quit for the day. Love stated that he walked around the back of the combine and headed toward the ladder to climb up into the cab, but that, as he headed toward the ladder, he "tilted forward" and saw a big tractor tire. He stated that he does not remember whether he stumbled or what caused him to tilt and head toward the tire. The tire Love referred to was the front combine tire located just forward of the ladder. The pulley and belts which were normally covered by the banana shield were generally behind the tire on the side of the combine.

Love stated the last thing he remembered was climbing up the ladder and noticing that his right hand was missing. Love managed to get into his truck and drive to his brother's house, whence he was taken to the hospital.

Love's severed hand was later found lying on the combine, about four feet forward of the belt and pulley area. There were a few flecks of blood around the pulley area.

The case was submitted on the theory of strict liability for design defect in the combine, and the court instructed the jury to assess a "percentage of fault to defendants" if the jury found the elements of the strict liability tort existed.

The court instructed on contributory negligence by Instruction No. 9. That instruction directed the jury to assess a percentage of fault to Love whether or not the defendants were partly at fault if the jury found: either (1) that Love failed to inspect the combine on the day of the accident to determine that the banana shield was present, or (2) that Love failed to keep a careful lookout; that Love was thereby negligent; and that such negligence caused or directly contributed to cause Love's damage.

The trial court granted a new trial even without the benefit of the decision in *Lippard,* because it determined that Instruction No. 9 was erroneous.

After the decision in *Lippard,* the parties now agree that Instruction No. 9 was erroneous in allowing the jury to assess a percentage of fault to Love and to reduce any award to Love on the basis of contributory negligence.

In *Lippard* the Court stated that a plaintiff's contributory negligence is not at issue in a products liability case and should neither defeat nor diminish recovery. 715 S.W.2d at 493[1–3]. The *Lippard* Court added that, although a plaintiff's negligence of itself does not diminish the plaintiff's recovery, such negligence may be used as evidence in support of arguments that the product is not unreasonably dangerous or that the alleged defects in the product did not cause the injury. *Id.* [2]. However, these arguments are merely "traversing claims not appropriate for instruction." *Id.*

Although the *Lippard* Court held that contributory *negligence* has no place in the instructions in a products case, contributory *fault* may be submitted by MAI 32.-23 (1981) as a complete defense in such a case. MAI 32.23 instructs the jury that it must return a verdict for the defendant in a products liability case if it finds the plaintiff knew of and appreciated the danger in the use of a product (as described in plaintiff's verdict director), but nevertheless voluntarily and unreasonably exposed himself to such danger, thereby directly causing or contributing to cause his damages.

Thus, under *Lippard* a products liability case is submitted to a jury on an "all or nothing at all basis". *Earll v. Consolidated Aluminum Corp.,* 714 S.W.2d 932, 937[4] (Mo.App.1986). Apportionment of

fault (and hence, damages) between the plaintiff and defendant is not possible, but contributory fault of the type outlined in MAI 32.23 completely precludes recovery.

The Deere defendants offered an instruction in the form of MAI 32.23 at trial, but the court refused to give it.

■ The parties agree with the foregoing analysis of *Lippard*. However, the Deere defendants contend that they are entitled to judgment as a matter of law because the evidence can only support the conclusion that Love intentionally placed his hand on the moving belt to test its tension, fully knowing of and appreciating the danger, and that Love's act alone caused the injury. The defendants base this conclusion on the evidence of an expert who calculated that according to Love's version of the facts, at the time Love began to tilt forward, he would have been about eight feet from the belt and pulley assembly that was left exposed. The expert concluded that since Love was only 5′4″ in height, he could not have reached the belt area from the distance of eight feet away, so as to accidentally place his hand in contact with the belt, which was approximately five feet above the ground. The Deere defendants also relied on evidence that Love told his brother immediately after the accident that Love had put his hand in the combine. The Deere defendants contend that this evidence, coupled with the jury's assessment of Love's fault at 90 percent, must result in a judgment in favor of the defendants.

The Deere defendants in effect request this court to enter a directed verdict in their favor. The test to determine when a directed verdict is appropriate is whether reasonable and honest men could differ on the correct disposition of the case. *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 833 [3, 4] (Mo.App.1984). The evidence relied on by the Deere defendants does not support a directed verdict in their favor. The defendants' argument based on Love's distance from the combine supposes that Love necessarily fell straight down from his point some eight feet from

the belts and pulleys. However, Love testified that he had a sore shoulder and pain in his head from hitting the tire. The jury could have believed from this that Love started stumbling when he was about eight feet from the belts, but that he continued in a path toward the belts for some distance before he actually put his hand up for support and became caught in the belt.

The Deere defendants' argument based on Love's statement to his brother is similarly inconclusive. Love's statement to his brother that he "got" or "put" his hand in the combine did not necessarily mean that Love intentionally placed his hand on the belt. His statement could just as easily be construed as a statement that he placed his hand on the belt involuntarily when he started falling.

The evidence in this case is such that reasonable and honest men could differ on a correct disposition.

Though the Deere defendants argue that the jury's verdict finding Love ninety percent at fault mandates a judgment in favor of the defendants, the jury's verdict was simply not designed to decide the case under the *Lippard* rules. The fact that the jury assessed ten percent of the fault against the defendants reveals that it found that the combine was defective. But, from the instructions given and the verdict rendered, there is no way of knowing whether the jury believed Love intentionally grasped the moving belt or whether it believed he was merely negligent in some way. Accordingly, Deere is not entitled to entry of judgment by this court.

■ The Loves contend that under the *Lippard* holding, they are entitled to judgment for the full amount of the damages awarded by the jury. The court in *Lippard* held that, even though an erroneous instruction was given which allowed the jury to assess a percentage of fault against the plaintiff, the jury had made a finding as to the plaintiff's damages, on which the Court could simply enter judgment. However, *Lippard* is distinguishable from this case in that the *Lippard* Court specifically

held that there was no evidence in that case to support an instruction in the form of MAI 32.23. 715 S.W.2d at 494. For that reason, the Court could disregard the percentage of fault assessed against the plaintiff and enter judgment on the full amount of the verdict. But in this case, the evidence tending to prove Love intentionally grasped the moving belt would support the giving of MAI 32.23, though it was refused. This means a jury issue remains as to whether or not Love intentionally placed his hand in the moving belt. Therefore, the rationale of the *Lippard* Court in ordering judgment for the plaintiff is inapplicable in this case, and this case must be retried.

It is obvious that liability is a close question in this case, as evidenced by the jury's assessment of fault at 90 percent against Love. Nevertheless, the parties are entitled to a jury's resolution, under proper instructions, of the issue of whether or not Love intentionally placed his hand on the belt.

The judgment granting a new trial is affirmed and this cause is remanded for further proceedings. Costs are assessed against the defendants.