**Michelle Renee LaHUE, John LaHue and Sharon LaHue, Plaintiffs,**

**v.**

**GENERAL MOTORS CORPORATION, Defendant.**

No. 88–5063–CV–SW–1.

United States District Court, W.D. Missouri, Southwestern Division.

July 5, 1989.

Erwin Milne, Stockard, Andereck, Jefferson City, for plaintiffs.

Rod Loomer, Turner, Reid, Duncan, Springfield, for defendant.

## ORDER

WHIPPLE, District Judge.

Four motions are pending in this matter. Defendant filed a motion on April 10, 1989, for leave to file a first amended answer to the first amended complaint. Plaintiffs filed a motion on April 14, 1989, to strike part of the defendant's original answer to the first amended complaint. Plaintiffs' motion, filed May 4, 1989, to compel answers to interrogatories and to compel production of documents was the topic of a telephone conference on June 14, 1989, wherein the parties announced resolutions of most of the matters. Ruling on that motion will be deferred until the parties designate which issues remain for court intervention. Finally, defendant's motion to continue the trial date was granted orally at the conference. A trial order will issue accordingly, setting a pretrial conference for 1:00 p.m., August 4, 1989, and trial at 9:00 a.m., September 7, 1989, both in Springfield, Missouri. For the reasons set forth below, the motion to strike will be granted in part and denied in part, and the motion to file a first amended complaint will be granted in part and denied in part.

## I. *The Motions*

Plaintiffs allege damages arising from an automobile accident involving a car manufactured by defendant. Plaintiffs claim the damages are due to defective design of the car seats. The motions concern paragraphs 14–16 of the defendant's answer, and paragraphs 14–18 of defendant's proposed amended answer to first amended complaint. The disputed parts of the answer are:

14. For further answer, Defendant avers that Plaintiff, Michelle LaHue, was chargeable with fault which contributed to cause or did, in fact, cause the damages referred to in her First Amended Complaint; avers that such contributory fault consisted of negligence on the part of said Plaintiff in the operation of her vehicle which she then was driving; and avers that such fault of said Plaintiff was in the following manner and particulars, to-wit:

(a) She drove at an excessive speed;

(b) She failed to yield the right-of-way;

(c) She failed to drive on the right side of the road.

15. For further answer, Defendant avers that Plaintiff, Michelle LaHue, is chargeable with fault which contributed to cause or did cause the damages referred to in her First Amended Complaint; and avers that such contributory fault consisted of her failure to wear a seat belt at the time of the occurrence.

16. For further answer, Defendant avers that, by reason of the foregoing, *if* (contrary to Defendant's contention) Defendant should be found to have been partially at fault for causing any of Plaintiffs' damages, the percentage of Plaintiff Michelle LaHue's said contributory fault should be determined, and the total amount of Plaintiffs' damages should be diminished proportionately by the percentage of the contributory fault of Plaintiff, Michelle LaHue.

Paragraph 14 of the answer is the same as Paragraph 14 of the proposed first amended answer to the first amended complaint. The other disputed parts of the proposed answer are:

15. For further answer, Defendant avers that any damages referred to in Plaintiffs' First Amended Complaint were avoidable consequences, and that Plaintiff, Michelle LaHue, failed to mitigate her damages by failing to wear her seat belt.

16. For further answer, Defendant avers that Plaintiff, Michelle LaHue, is chargeable with fault which contributed to cause or did cause the damages referred to in her First Amended Complaint, and avers that such fault of said Plaintiff was in the following manner and particulars, to-wit:

(a) She failed to wear a seat belt at the time of the occurrence;

(b) She failed to use the product as reasonably anticipated by the manufacturer;

(c) She misused the product by failing to wear her seat belt;

(d) She failed to undertake the precautions a reasonably careful user of the product would take to protect herself against dangers which she would reasonably appreciate under the same or similar circumstances.

17. For further answer, Defendant avers that, by reason of the foregoing, *if* (contrary to Defendant's contention) Defendant should be found to have been partially at fault for causing any of Plaintiffs' damages, the percentage of Plaintiff, Michelle LaHue's said contributory fault should be determined, and the total amount of Plaintiffs' damages should be diminished proportionately by the percentage of contributory fault of Plaintiff, Michelle LaHue.

18. For further answer, Defendant avers that Plaintiff, LaHue, voluntarily and unreasonably exposed herself to any alleged danger by failing to wear her seat belt and that such conduct caused or directly contributed to cause any damage that Michelle LaHue may have sustained.

Plaintiffs argue that this lawsuit is a products liability matter and, therefore, defendant cannot plead or offer evidence concerning its proposed theories of contributory negligence, contributory fault, avoidance of consequences, mitigation of damages, assumption of risk, product misuse and comparative fault. Plaintiffs further argue that Mo.Rev.Stat. § 307.178.3 (1985) precludes admission of evidence concerning failure to wear a seat belt. Plaintiffs argue alternatively that, if such evidence is admissible, the admission concerns only mitigation of damages and the damages can be reduced only by one percent of the amount awarded.

Defendant argues that Missouri law permits the defenses of assumption of risk, contributory negligence and product misuse in products liability cases. Defendant further argues that the mitigation-of-damages/avoidable-consequences theory is permitted where all or part of the injury results from failure to use a seat belt. Defendant argues that the Missouri statute does not apply to "crashworthiness" cases [1]. Finally, defendant argues that the statute violates the equal-protection, due-process, and jury-trial clauses of the constitutions of the United States and Missouri.

## II. *Statement of Facts*

According to the allegations in the complaint, Michelle LaHue, a minor, was driving a 1980 Buick Century about 10:30 p.m., January 9, 1987, in Stone County, Missouri, when it collided with another vehicle. She was thrown rapidly into the back seat, suffering numerous and substantial permanent and progressive injuries. She also incurred expenses and loss of future earnings capacity. The other two plaintiffs are her parents. Plaintiffs allege the damages are due to defective seat design.

## III. *Discussion*

### A. *Introduction*

In this diversity action involving an accident occurring in Missouri, the law of that state as enunciated by Missouri courts controls. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties do not dispute that Missouri law controls, but there is considerable disagreement about what the law is. A sim-

---

1. "Crashworthiness" cases are products liability cases concerning manufacturers' duty to use reasonable care in designing automobiles. *See Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968). Ordinarily the injuries occur when, in an accident, occupants collide with the interior of their cars or are thrown from the cars and collide with something else. The cases also are known variously as "second collision" cases and "enhanced injury" cases. They focus on injuries attributable to alleged design defects, rather than initial impacts.

ilar problem arose in *Sours v. General Motors Corp.*, 717 F.2d 1511 (6th Cir.1983), when it discussed *Roberts v. Bohn*, 26 Ohio App.2d 50, 269 N.E.2d 53 (1971), *rev'd on other grounds sub nom. Suchy v. Moore*, 29 Ohio St.2d 99, 279 N.E.2d 878 (1972). In *Roberts*, evidence of failure to use a seat belt was held inadmissible. The court said in *Sours*, 717 F.2d at 1520–1521:

\* \* \* \* \* \*

*Roberts* was decided in 1971. Since then the law on the admissibility of seat belt evidence has been in a state of flux. The policy implications of the various rules have been roundly debated, with a resulting patchwork-quilt of state law on the issue. In some states, such evidence is wholly inadmissible, on the theory that automakers must design a vehicle that is safe for those who, foreseeably, will not wear seat belts. In others, the policy of encouraging seat belt use has led to approval of the seat belt defense under either a contributory negligence or mitigation of damages rationale. Under the circumstances it is possible that the Ohio Supreme Court, if the question were properly presented, might adopt a rule different from that of *Roberts* ... Thus we find ourselves in the somewhat unenviable position of attempting to anticipate a ruling of the Ohio Supreme Court in an important area of state law.

Our attempt to predict the Ohio Supreme Court's position on the seat belt defense is complicated further by the peculiarly *legislative* nature of the issue. The penalties to be attached to seat belt non-use are uniquely amenable to resolution by the state legislature. Indeed a number of other state courts have left to their legislatures the determination of the evidentiary effect of a plaintiff's failure to wear a seat belt. In light of the nature of the undertaking and the contrasting developments in other jurisdictions, any decision we might reach concerning this delicate balance of policy interests might not pass muster by the Ohio Supreme Court. We hesitate to announce a decision, unless absolutely required to do so, in an important area of

state law where there is no sure guidance from the state courts.

Fortunately, we need not resort to tea leaves or to judicial tarot cards—or to a bold substitution of our own views for those of the Ohio Supreme Court—to resolve the issue of admissibility of the seat belt evidence in the instant case. We hold that, regardless of whether the evidence should have been admitted, its exclusion, if error at all, was harmless.

\* \* \*

(footnotes and citations omitted)

This court is less fortunate and in a more unenviable position than the *Sours* court because it is absolutely required in this instance to make a decision. Enough has been written about the "seat-belt defense" to show the body of law related to it is split, fragmented and changing. It varies in time, place, rationale, effect and implementation. No doubt the law varies so much because the theory does not fit neatly into traditional tort doctrines of negligence (including duty, breach of duty and causation), strict liability, contributory negligence, mitigation of damages, avoidance of consequences, and comparative fault. *Dunn v. Durso*, 219 N.J.Super. 383, 530 A.2d 387, 395 (1986); *See also*, Annot., *Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence*, 92 A.L.R.3d 9 (1979); and Annot., *Nonuse of Seat Belt as Failure to Mitigate Damages*, 80 A.L.R.3d 1033 (1977 and 1988 Supp.).

### B. Missouri Statute

█ Under Mo.Rev.Stat. § 307.178.2, motor vehicle drivers in Missouri are required to wear fastened seat belts. Further, Section 307.178.3 provides:

3. In any action to recover damages arising out of the ownership, common maintenance or operation of a motor vehicle, failure to wear a safety belt in violation of this section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this section may be admitted to mitigate damages, but only under the following circumstances:

(1) Parties seeking to introduce evidence of failure to wear a safety belt in violation of this section must first introduce expert evidence proving that a failure to wear a safety belt contributed to the injuries claimed by the plaintiff;

(2) If the evidence supports such a finding, the trier of fact may find that the plaintiff's failure to wear a safety belt in violation of this section contributed to the plaintiff's claimed injuries, and may reduce the amount of the plaintiff's recovery by an amount not to exceed one percent of the damages awarded after any reductions for comparative negligence.

Plaintiffs urge that this provision precludes evidence of failure to wear a seat belt. Alternatively, plaintiffs urge that if the evidence is admissible, the award may not be reduced by more than one percent. Defendant argues that the statute applies only to simple negligence cases, not a "crashworthiness" case such as this.

"Crashworthiness" is a well-established doctrine which was enunciated in *Larsen v. General Motors Corp.,* 391 F.2d 495, 503 (8th Cir.1968). In that case, the court recalled *MacPherson v. Buick Motor Co.* 217 N.Y. 382, 111 N.E. 1050 (1916), wherein auto manufacturers were found to have a duty to construct their vehicles free of latent defects. The *Larsen* court reasoned:

> * * * We can perceive of no significant difference in imposing a common law duty of a reasonable standard of care in design the same as in construction. A defect in either can cause severe injury or death and a negligent design defect should be actionable. * * *

The decision precipitated a nationwide flood of products liability claims directed at auto manufacturers. In many of these cases, the "seat-belt defense" was an issue. The courts split sharply on whether to permit evidence of failure to use a seat belt, and on the supporting rationale. *See, e.g., Horn v. General Motors Corp.,* 34 Cal. App.3d 773, 110 Cal.Rptr. 410 (1973), *vacated,* 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976); *Wilson v. Volkswagen of America, Inc.,* 445 F.Supp. 1368 (E.D.Va. 1978); *Hampton v. State Highway Comm'n,* 209 Kan. 565, 498 P.2d 236 (1972); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okla.1976); *Henderson v. United States,* 429 F.2d 588 (10th Cir. 1970). In these last two cases, the courts reached opposite results in construing the same Oklahoma law.

A prominently discussed point in these types of cases was the need for legislative, rather than judicial, action. Some courts have been reluctant to recognize the seat belt defense in the absence of a legislative mandate creating a duty to use a seat belt. *Dunn v. Durso,* 219 N.J.Super. 383, 530 A.2d 387, 395 (1986). *See e.g., Fischer v. Moore,* 183 Colo. 392, 517 P.2d 458 (1973); *Britton v. Doehring,* 286 Ala. 498, 242 So.2d 666 (1970); *Thomas v. Henson,* 102 N.M. 326, 695 P.2d 476 (1985), *aff'g in part and rev'g in part,* 102 N.M. 417, 696 P.2d 1010 (N.M.App.1984). Others considered whether the legislature provided somehow for the seat belt defense, such as *Derheim v. N. Fiorito Co.,* 80 Wash.2d 161, 492 P.2d 1030 (1972), where the court would have permitted the defense if there were a comparative negligence statute in effect.[2]

State legislatures have acted. At least 27 states (including Missouri) and the District of Columbia have enacted laws requiring seat-belt use.[3] Generally, these laws preclude evidence of failure to use a seat belt for purposes of comparative fault. *Id.* Some states may permit the evidence in some circumstances, but limit the amount of reduction in the award, such as Michigan and Iowa (5%), Louisiana (2%), and Missouri (1%).

---

**2.** In *Law v. Superior Court of State of Ariz.,* 157 Ariz. 147, 755 P.2d 1135, 1143 (1988), the court reached an opposite result with the same reasoning. The court judicially permitted the seat belt defense because Arizona had a comparative negligence statute, even though Arizona had no law compelling use of seat belts.

**3.** A comparison of statutes appears in *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 727–728 n. 9 (1987).

In addition to enacting seat-belt laws, states also have enacted comparative-fault statutes. *See Gustafson v. Benda,* 661 S.W.2d 11, 13 n. 9 (Mo. banc 1983), listing 32 states. The Missouri legislature adopted comparative fault in 1987. Mo. Rev.Stat. § 537.765. The Missouri Supreme Court had adopted it judicially in *Gustafson.*

In 1988, the year after adopting comparative negligence, the Missouri legislature amended subsection 4 of the seat belt statute, Section 307.178. However, the amendment did not affect the requirement that drivers wear fastened seat belts. The amendment also did not affect the requirements for admitting or precluding evidence of failure to wear a seat belt.

The foregoing discussion of crashworthiness, the seat belt defense, court decisions, and legislative action is presented to assemble a context within which to interpret the Section 307.178. The legislature obviously manifested an intent to promote seat belt use. In addition, it manifested an intent to preclude entirely, in some instances, evidence of failure to use seat belts. Finally, it manifested its intent to restrict, in some instances, the reduction of damage awards where evidence is permitted in regard to failure to use seat belts.

The legislature clearly specified the sorts of cases in which evidence of failure to use seat belts was inadmissible. In Section 307.178.3 the legislature established that the evidence of failure to use seat belts could not be used (except under certain circumstances to mitigate damages) "[i]n any action to recover damages arising out of *the ownership, common maintenance or operation* of a motor vehicle." (emphasis added)

Conspicuously absent is any reference to the *design* or *construction* of a motor vehicle. Even the most liberal interpretation of the words "ownership," "common maintenance" and "operation" cannot stretch far enough to include design and construction. The plain meaning of the statute compels a conclusion that it was not intended to prevent evidence of failure to use seat belts in a products liability case.

The absence of a restriction on such evidence in products liability cases cannot be presumed to be an oversight. Before the statute was enacted, there were many "crashworthiness" cases where the seat-belt defense was in dispute. Numerous courts based their decision upon their legislatures' action, or their failure to act, as illustrated by the cases cited *supra* at page 411. Numerous states enacted a variety of seat-belt laws. The Missouri legislature passed an unrelated amendment to its own seat-belt statute in 1988, after the comparative fault statute took effect, but made no effort to add products liability cases to the statute's scope.

Acting within this context, the legislature must be presumed to know it could have included products liability cases in the statute if it intended to restrict evidence in those cases. Inasmuch as the statute does not apply to the case at hand, the one-percent limit on reduction of damages also does not apply. Further, there is no need to address defendant's arguments that the statute is unconstitutional.

### C. Defenses to Products Liability Claims

#### 1. Contributory Negligence

■ The law in products liability cases is well established that a claimant's contributory negligence does. not bar recovery. *Keener v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362, 365 (Mo. banc 1969); *Hoppe v. Midwest Conveyor Co., Inc.,* 485 F.2d 1196, 1201 (8th Cir.1973); *Lippard v. Houdaille Indus., Inc.,* 715 S.W.2d 491, 492 (Mo. banc 1986). Accordingly, to the extent failure to use a seat belt is considered contributory negligence, it is no defense to a claim of unreasonably dangerous defective design.

#### 2. Comparative Fault

##### a. Assumption of Risk and Misuse of Product

In *Harper v. NAMCO, Inc.,* 765 S.W.2d 634, 636–637 (Mo.App.1989), the Missouri Court of Appeals recently discussed comparative fault and assumption of risk in a products liability case:

The plaintiff cites, in support of his position, that the trial court erred in submitting an instruction on comparative fault[.] *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491 (Mo. banc 1986). While it is true that this case held that comparative fault is not applicable in a product's liability case, the majority opinion does leave the door open for the submission of the defense of contributory fault consistent with Missouri Approved Instruction (MAI) 32.23 in appropriate cases. *Id.* at 493. The majority opinion seems to support the proposition that where it may be found that the plaintiff assumed the risk, or voluntarily and unreasonably exposed himself to a known danger, then such an instruction would be appropriate. *Id.* Consequently MAI 32.23, the affirmative defense instruction relative to contributory fault, is a complete defense to strict liability.

Since the *Lippard* decision in 1986, there have been no Missouri cases which have found that a plaintiff "voluntarily and unreasonably exposed himself to a known danger", and thereby permitted a submission under MAI 32.23. The question to be answered is just when does one expose himself to such a known danger. Our review has led to a comparison of the standard for assumption of risk with that for contributory fault. The standards set forth in *Lippard* seem very close to those required by the legal principle "assumption of risk."

We consult *Prosser & Keeton on Torts,* § 68 at 486–487 (5th ed. 1984):

*Knowledge and Appreciation of Risk*

The defense of assumption of risk is in fact quite narrowly confined and restricted by two or three elements or requirements: first, the plaintiff must know that the risk is present, and he must further understand its nature; and second, his choice to incur it must be free and voluntary.

'Knowledge of the risk is the watchword of assumption of risk.' Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he has no knowledge. Moreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts.

The Eighth Circuit Court of [A]ppeals held in *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1331 (8th Cir.1985) that:

Missouri recognizes contributory fault as an affirmative defense to strict liability. To be charged with contributory fault, however, the plaintiff must know the facts which create the danger and comprehend and appreciate the danger itself. *Collins v. B.F. Goodrich Co.,* 558 F.2d 908, 911–12 (8th Cir.1977) (Missouri law); *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, 364 (Mo.1969) (tire rim case). There must be evidence that the danger is open and obvious and that plaintiff voluntarily and unreasonably encountered a known risk. *Haines v. Powermatic Houdaille Inc.,* 661 F.2d 94, 96 (8th Cir. 1981). The plaintiff, however, need not know the exact design defect but only of the risk to the user. *Ensor v. Hodgeson,* 615 S.W.2d 519, 525 (Mo.Ct. App.1981).

*See also, Melia v. Ford Motor Co.,* 534 F.2d 795, 801 (8th Cir.1976).

A seat belt defense was discussed in *Melia v. Ford Motor Co.,* where the defendant had appealed. In that case, applying Nebraska law, the court said the jury properly was allowed to consider whether the decedent misused his car or assumed the risk of injury by failing to wear the seat belt or lock the door. The trial court had instructed that recovery would be barred if the jury found misuse or assumption of risk. *Id.* at 799. However, the court added:

\* \* \* On this record, the defendant is in no position to assert that the court erred in failing to rule in its favor as a matter of law. *Cf. Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196 (8th Cir.1973).

In a footnote, the court explained:

We need not pass on the propriety of submitting as evidence of assumption of

risk and misuse the defenses pled: failure to push down the door lock and failure to wear a seat belt. Instructing upon these defenses could only be prejudicial to the plaintiff. The fact is, they were submitted to the jury, at defendant's request[,] and the jury obviously rejected them.

Although the propriety of pleading the two defenses (assumption of risk and misuse of product) was not litigated or decided in that case, the court recognized those defenses are available in products liability lawsuits. The court provided some guidance regarding how they must be raised. It discussed assumption of risk, 534 F.2d at 800–802, and said this about misuse of product:

> * * * The intended use doctrine necessarily includes foreseeable consequences of misuse. With hindsight one might conclude that the decedent would not have been fatally injured had she used her seat belt or locked her door. However, one cannot say as a matter of law that such conduct of an automobile user was not reasonably foreseeable. There is no evidence that the decedent knew that the door latch was defectively designed or was aware of the danger that it might open, upon collision, if the door was not locked. Thus it cannot be argued that the defect was discovered and the product unreasonably used after the discovery of the defect. Foreseeable use includes any particular use which should be known to a reasonably prudent manufacturer. * * *

*Melia v. Ford Motor Co., supra,* 534 F.2d at 799–800.

Defendant urges in this instance that, by failing to buckle her seat belt, plaintiff Michelle LaHue assumed the risk of injury in an automobile accident and the risk that the injury would be enhanced by her failure to wear the fastened belt. Defendant argues that her fault contributed to the injury, so the contributory fault defense may be argued. Defendant also urges that Michelle LaHue misused the car, and did not use it as reasonably anticipated by the manufacturer.

■ Although, as discussed in *Harper, supra,* contributory fault is a permissible defense in a products liability case (if the plaintiff knows of and appreciates the danger), it cannot apply here as pleaded. Defendant has misidentified the nature of the risk which plaintiff assumed, if any. Her complaint concerns injury attributable to an alleged design defect, not to the automobile accident. Defendant does not satisfy the definitional requirements of contributory fault, assumption of risk, and misuse of the product. Defendant would need to allege that Michelle LaHue knew of the design defect because the danger was open and obvious, and that she voluntarily and unreasonably encountered that known risk. *See also, Miller v. Haynes,* 454 S.W.2d 293, 300 (Mo.App.1970).

An analogy might be drawn by considering someone who chooses to participate in a fist fight. Obviously that person assumes the risk of injury. However, if he is unaware the opponent is a professional boxer, he cannot be said to have assumed the risk of the enhanced injury which he is likely to suffer—risk which is much greater than the obvious risk in an ordinary fist fight.

Likewise, even if Michelle LaHue assumed the ordinary risk of being in an auto accident without her seat belt, there are no facts to show she assumed the additional risk of injury arising from a design defect. In other words, defendant is directing its defense at the first collision rather than at the alleged design defect which triggered the so-called second collision.

■ Accordingly, the contributory-fault theory of assumption of risk cannot be a defense under the facts presented in defendant's answer. Furthermore, *Melia* makes clear that failure to buckle a seat belt is not, as a matter of law, misuse of the product because such conduct may be reasonably foreseeable. 534 F.2d at 800. Therefore, the contributory fault theory of misuse of product cannot be a defense under the facts presented in the defendant's answer.

### b. *Mitigation of Damages and Avoidance of Consequences*

■ Two other types of contributory fault which frequently are applied in seat-

belt cases are the theories of mitigation of damages and avoidance of consequences. The uniqueness of this kind of case is examined in *Spier v. Barker*, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164, 168 (1974), the seminal case in applying the mitigation-of-damages theory to the failure to use seat belts:

> As Prosser has indicated, the plaintiff's duty to mitigate his damages is equivalent to the doctrine of avoidable consequences, which precludes recovery for any damages which could have been eliminated by reasonable conduct on the part of the plaintiff (Prosser, Torts [4th ed.], § 65, pp. 422–424.) Traditionally both of these concepts have been applied only to postaccident conduct, such as a plaintiff's failure to obtain medical treatment after he has sustained an injury. To do otherwise, it has been argued, would impose a preaccident obligation upon the plaintiff and would deny him the right to assume the due care of others (Kleist, Seat Belt Defense—An Exercise in Sophistry, 18 Hastings L.J. 613, 616). We concede that the opportunity to mitigate damages prior to the occurrence of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation [of] damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident. Highway safety has become a national concern; we are told to drive defensively and to "watch out for the other driver". When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity.

The court concluded, at 363 N.Y.S.2d at 921–22, 323 N.E.2d at 169, that if the defendant is able to show that the seat belt would have prevented some of plaintiff's injuries, the jury should be permitted to apportion the damages accordingly.

Numerous other courts in recent years have adopted the mitigation theory and allowed apportionment of damages. *See, e.g., Dahl v. BMW*, 304 Or. 558, 748 P.2d 77, 83 (1987); *Insurance Company of North America v. Pasakarnis*, 451 So.2d 447, 453 (Fla.1984); *Lowe v. Estate Motors Ltd.*, 428 Mich. 439, 410 N.W.2d 706, 721 (1987); *Foley v. City of West Allis*, 113 Wis.2d 475, 335 N.W.2d 824, 831 (1983). Where a causal connection can be shown between non-use of a seat belt and injury, courts of—or courts applying the laws of—Alaska, Arizona, California, Illinois, Indiana, Louisiana, Michigan, New York, New Jersey, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Virginia, Virgin Islands, and Wisconsin have allowed the question to be submitted to the jury. *See*, Annotation, "Nonuse of Seat Belt as Failure to Mitigate Damages," 80 A.L.R.3d 1033 (1977 and 1988 Supp.) and *see also, e.g., Caiazzo v. Volkswagonwerk A.G.*, 647 F.2d 241, 252 (2nd Cir.1981) (New York law); *Sewell v. Wofford*, 131 Ill.App.3d 62, 86 Ill.Dec. 361, 475 N.E.2d 575, 577 (1985); *Dunn v. Durso*, 219 N.J.Super. 383, 530 A.2d 387, 397 (1986); *Law v. Superior Court of Ariz.*, 157 Ariz. 147, 755 P.2d 1135, 1143 (1988); *Hutchins v. Schwartz*, 724 P.2d 1194, 1199 (Alaska 1986); *Henderson v. United States*, 429 F.2d 588, 591 (10th Cir.1970) (Oklahoma law); *Pritts v. Walter Lowery Trucking Co.*, 400 F.Supp. 867, 871 (W.D.Pa.1975); *Jordan v. General Motors Corp.*, 624 F.Supp. 72, 76 (E.D.La.1985); *Wilson v. Volkswagen of America, Inc.*, 445 F.Supp. 1368, 1372–1373 (E.D.Va.1978). *Meyers v. Cruzan Motors Ltd.*, No. 1985/118, slip op. at 6, 1986 WL 10123 (D.C.V.I. July 24, 1986).

In Missouri, the St. Louis Court of Appeals reached an opposite conclusion in 1970. In *Miller v. Haynes*, 454 S.W.2d 293, 300–301 (Mo.App.1970), the court found there was no duty to wear a seat belt and, therefore, a plaintiff's award could not be reduced for failure to mitigate. It also rejected the mitigation theory, at pages 299 and 300, because Missouri did not subscribe at that time to comparative fault and be-

cause the failure to fasten a seat belt occurred before the accident.[4]

In more recent years, Missouri courts have refined the relatively new (to Missouri) concept of comparative fault. In *Love v. Park Lane Medical Center,* 737 S.W.2d 720, 724 and 725 (Mo.1987), a medical malpractice case, the court endorsed expression of mitigation of damages as a percentage of fault. In *Love v. Deere & Co.,* 720 S.W.2d 786, 788–789 (Mo.App. 1986), a products liability case, the court followed *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491 (Mo.banc.1986), in holding that comparative fault is not an issue in a products liability case so damages cannot be apportioned on that basis.[5]

Even though the trend in other states appears to be drifting toward apportioning damages based upon failure to mitigate, the *Miller* case suggests a Missouri court would reach an opposite result in a seatbelt case—finding a lack of duty by plaintiff to wear a seat belt. The finding would be particularly likely to occur in a products liability case where fault is not an issue in Missouri. However, Missouri also has demonstrated a trend toward sharing the costs of injuries where they are not all attributable to a single defendant.

### 3. Causation

■ Missouri courts consistently have held that a plaintiff's fault (except an informed assumption of risk or misuse of product) is not relevant in products liability cases, as illustrated by *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491, 493 (Mo.banc.1986) and the various cases relying upon it. However, they have recognized that a defendant may show evidence that (1) plaintiff's carelessness was an alternate cause of injury and/or (2) the design was not defective or, even if so, did not cause injury. *Lippard, supra,* at 493; *Love v. Deere & Co.,* 720 S.W.2d 786, 788 (Mo.App.1986); *Castle v. Modern Farm*

*Equipment Co.,* 729 S.W.2d 650, 653 (Mo. App.1987); *Ponte v. Harley Davidson Motor Co.,* 732 S.W.2d 561, 562–563 (Mo.App. 1987); *Barnes v. Tools & Machinery Builders, Inc.,* 715 S.W.2d 518, 522 (Mo. banc.1986).

Accordingly, defendant urges it should be permitted to show that plaintiffs' injuries arose entirely or in part from the failure to wear a seat belt, to drive at the proper speed, to yield right of way, and to drive on the right side of the road. Defendant urges that plaintiffs' injuries resulted entirely or in part from those factors rather than an alleged design defect.

Under the permitted theory of alternate cause, i.e., plaintiff's carelessness, evidence of such actions may be admitted. Even though plaintiff may not have had a duty to wear a seat belt, and even though contributory fault would not be relevant in a products liability action, a defendant may attempt to prove that the injuries were caused by something other than an alleged design defect. If evidence shows that all or part of the injury is attributable to something other than a design defect, the critical element of causation is missing. In that instance, a defendant is not, and should not be, liable for harm which that defendant did not cause by way of a design defect.

The original "crashworthiness" case, *Larsen v. General Motors Corp.,* 391 F.2d 495, 503 (8th Cir.1968), directly addressed this point:

> * * * Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design. The manufacturer argues that this is difficult to assess. This is no persuasive answer and, even if dif-

4. Of course, the seat belt use became mandatory later upon the enactment of Mo.Rev.Stat. § 307.178. Also, comparative negligence since has been adopted in Missouri by case law (*Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983)) and statute (Mo.Rev.Stat. § 537.765).

5. The court also acknowledged that *Lippard* permits evidence of a plaintiff's negligence in support of arguments that a product was not unreasonably dangerous or that the alleged defects in the product did not cause the injury.

ficult, there is no reason to abandon the injured party to his dismal fate as a traffic statistic, when the manufacturer owed, at least, a common law duty of reasonable care in the design and construction of its product. * * *

The court then discussed, at 503–504, the situation in which only part of the injury was attributable to a design defect:

* * * The obstacles of apportionment are not insurmountable. It is done with regularity in those jurisdictions applying comparative negligence statutes and in other factual situations as condemnation cases, where in some jurisdictions the jury must assess the value of the land before and after a taking and then assess a special benefit accruing to the remaining property of the condemnee.

Generally the burden of proving enhanced injury is apart of the plaintiff's responsibility. *Fox v. Ford Motor Co.*, 575 F.2d 774, 787 (10th Cir.1978).

The concept of apportioning damages attributable to design defects is consistent with Missouri law. It permits the evidence to support theories that (1) the design was not defective, (2) even if the design is defective, it did not result in all the injury, and (3) even if a design defect resulted in some injury, the defendant should pay for only the injury arising from the defect. Missouri statutes have demonstrated the legislature's desire to promote use of seat belts and to share the cost of injuries among those who caused them. Missouri case law has demonstrated the courts' desire to permit defendants to prove whether something other than design defects caused plaintiffs' injuries.

Admittedly, introduction of such evidence might appear to be permitting evidence of contributory fault and to be applying comparative fault principles. However, that is not the focus here. Even if those incidental consequences occur, the intent is to permit examination of the causation element to see if a strictly liable defendant should be compelled to pay damages.

### 4. Total Design

■ Defendant argues that seat belts are part of the design of an automobile.

Defendant urges that, if plaintiffs are permitted to use seat design evidence, defendant should be permitted to use design evidence concerning the seat-belt part of the car. The case law supports defendant's position that an automobile is a product which may be considered as a whole.

In *Melia v. Ford Motor Co.*, 534 F.2d 795, 800 (8th Cir.1976), the defendant raised the same argument by contending that the jury should have been permitted to consider whether the automobile as a whole was defective and unreasonably dangerous. In rejecting the defendant's contention, the court said such instructions had been given. "The trial court made clear through the instructions that the defect must have made the *automobile* unsafe for the reasonable use contemplated." *Id.* at 800.

In *Lowe v. Estate Motors Ltd.*, 428 Mich. 439, 410 N.W.2d 706, 719–720 (1987), the court elaborated:

By its nature, the defective crashworthiness design theory of liability requires that the vehicle be considered as a whole. *See Melia v. Ford Motor Co.*, 534 F.2d 795 (C.A.8, 1976); *Dreisonstock v. Volkswagenwerk, A.G.*, 489 F.2d 1066 (C.A.4, 1974); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). As expressed by the California Supreme Court in *Daly*, "the issue of defective design is to be determined with respect to the product as a whole...." *Id.* at 746, 144 Cal.Rptr. 380, 575 P.2d 1162. Accordingly, the jury should consider the vehicle's overall design, including safety features, in order to determine the crashworthiness issue, and, thus, whether the vehicle was defective in design. The need to weigh competing considerations in an overall product design, generally, and the relevant factors in that evaluation, were recently discussed by this Court in *Prentis [v. Yale Mfg. Co.], supra,* [421 Mich. 670, 365 N.W.2d 176 (1984)].

Evidence of the seat-restraint system goes to the heart of the issue of crashworthiness cases in which the plaintiff's injuries were sustained after being ejected from the vehicle, a result which seat

belts are specifically designed to prevent. Whether the plaintiff presents her case through a negligence theory—attempting to establish that the design of the vehicle created an unreasonable risk of injury—or through a breach of implied warranty theory—that the vehicle was not reasonably fit for its intended and foreseeable uses—the determinative issue of liability concerns whether the vehicle was unreasonably unsafe because of its design. Evidence of product safety features specifically designed to prevent the injuries complained of is entirely relevant to this issue. No reason, even arguably sound, exists, for excluding such evidence on this liability issue. Plaintiff has provided us with none.

In crashworthiness cases, the vehicle is to be considered as an integrated whole. Accordingly, seat belt evidence is admissible for that purpose. In the event that this cause proceeds to trial, the jury should be permitted to consider evidence concerning the seat-restraint system, along with all other relevant factors, in determining whether the vehicle was defective in design pursuant to plaintiff's crashworthiness theory.

Other courts have applied the same reasoning. *See White v. Estelle*, 720 F.2d 415 (5th Cir.1983); *Jordan v. General Motors Corp.*, 624 F.Supp. 72, 75 (E.D.La.1985); *Wilson v. Volkswagen of America, Inc.*, 445 F.Supp. 1368, 1371 (E.D.Va.1978).

The Missouri Supreme Court has held the same, too. In *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518, 522–523 (Mo. banc 1986), the court said:

> * * * The defendant is entitled to argue that the product contains sufficient safety devices so that it is not unreasonably dangerous and also that the alleged defects did not cause the accident.
>
> There is no abstract impropriety in the defendant's arguing that the plaintiff was at fault. The plaintiff must demonstrate that the defendant's product was in a "defective condition unreasonably dangerous" and that she was damaged as a "direct result of such defective condition." If the jury is persuaded that the

product was so designed that the plaintiff could easily avoid the accident, it might conclude that the required tests of defect and unreasonable danger had not been met.

In that products liability case, the jury was instructed to apportion damages by percentage where there was a finding that plaintiff assumed risk of injury.

The defendant in this case should be permitted to introduce evidence concerning whether seat belts were available and operable. As the cases cited above illustrate, the entire automobile is a product. The design of individual components within this car need not be considered in a vacuum because safety features such as seat belts are a part of the overall design. They are relevant to the issue of whether the overall design is defective and unreasonably dangerous.

## D. Apportionment

▇ As mentioned above, *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968), calls for apportionment of damages according to the specific injury attributable to a design defect. Even though a products liability case does not concern itself with contributory fault, *Larsen* makes clear that a manufacturer should be held liable for the damages caused by its design defects but not for damages arising from other causes. In *Thomas v. Henson*, 102 N.M. 417, 696 P.2d 1010, 1017 (N.M.App.1984), *aff'd in part and rev'd in part*, 102 N.M. 326, 695 P.2d 476 (1985), the court said, "[W]e believe the adoption of the seat belt defense as part of the apportionment of damages fits within the developing law of comparative fault...." However, the court noted at 696 P.2d at page 1020 that it was focusing on the damages, rather than negligence:

> Under the seat belt defense, as adopted herein, plaintiff's damages can be reduced *only* for that portion of the damages which plaintiff could have avoided by use of the seat belt. This constitutes apportionment, not a return to contributory negligence.

In *McLeod v. American Motors Corp.*, 723 F.2d 830, 834 (11th Cir.1984), the court followed the Restatement (Second) of Torts § 433A in holding that the plaintiff had the burden of showing that the alleged defect caused her injuries. The court left to the defendant, at page 835, the burden of persuasion for apportioning the amount of injury attributable to a design defect.

In *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1207 (8th Cir.1982), a seat-belt case, the court acknowledged that under *Larsen* damages for enhanced injuries would be apportioned. It also cited, at page 1206, the Restatement (Second) of Torts § 433A, and relied upon it for the proposition that damages may be apportioned between two causes if there are distinct harms or a reasonable basis for determining the causes of injury. The court, at 1208, also left the burden of proving apportionment to the defendants. It noted that whether harm is capable of apportionment among two or more causes is a question of law. Some injuries, such as death, are indivisible and, thus, incapable of apportionment, the court said. In that case, the court found that the evidence adduced at trial did not support the apportionment and a new trial was ordered to determine more accurately how damages should be apportioned.

### IV. *Conclusion*

Assimilation of Missouri cases and statutes in this area of the law, in light of the fluctuation and diversity across the nation, is no easy task. This opinion is intended to examine the applicable law in the context of the history and trends elsewhere to achieve a rational conclusion which is consistent with the statutes and with the cases in Missouri and federal courts.

Accordingly, defendant may plead, and attempt to prove, its defenses of failure to wear a seat belt, exceeding the speed limit, failure to yield the right of way, and failure to drive on the right side of the road. Those defenses are permitted on the issues of whether (1) their product is defectively designed and unreasonably dangerous or (2) plaintiffs' injuries are attributable to some cause other than the product design.

Defendant also may plead, and attempt to prove, that all or part of any injuries suffered by plaintiffs were attributable to some cause other than a design defect. If the defendant is able to show a sufficient causal connection between some injuries and a source other than a design defect, its liability may be apportioned accordingly by percentage.

Defendant may not plead or attempt to prove in this products liability case that any fault of plaintiffs contributed to any injuries they suffered, unless they can satisfy the requirements for the assumption-of-risk or misuse-of-product defenses. Defendant may not plead or attempt to prove that plaintiff Michelle LaHue, who had no duty to wear a seat belt, failed to mitigate her damages.

The decision here is intended to be consistent with Missouri law which prevents introduction of contributory fault in products liability cases. At the same time, it is intended to assure that a manufacturer be held liable for the injury arising from defective design, but not liable for injury which is not attributable to defective design. It is intended to be consistent with the legislature's apparent desire to promote seat belt use, and its desire to spread the cost of injuries in proportion to their degree of cause.

Certainly introduction of seat belt evidence, in effect, impliedly suggests contributory negligence or contributory fault theories. Likewise, apportioning damages by percentage impliedly suggests comparative fault principles. Those phenomena are unavoidable consequences. The defendant is entitled to raise the defenses, and apportion damages, according to the prevailing law. Efforts must be made, of course, to maintain the pleadings and evidence in a posture which is consistent with the rationale set forth above. That is, the presentation and focus must remain upon the alleged design defect and upon alternate causation, but not upon any alleged negligence, fault or omission of any plaintiffs.

Accordingly, it is

ORDERED that plaintiffs' motion, filed April 14, 1989, to strike paragraphs 14, 15,

**420**

and 16 of defendant's answer is granted insofar as it includes a theory of contributory negligence or contributory fault, but is denied in all other respects. It is further

ORDERED that defendant's motion, filed April 10, 1989, to file an amended answer is granted, conditioned upon submission of a suitable proposed amended answer which is consistent with this opinion, but is denied with respect to the particular proposed amended answer which accompanied the motion.