639 So.2d 997 (1994)
BISQUE ASSOCIATES OF FLORIDA, INC., etc., Appellant/Cross-Appellee,
v.
TOWERS OF QUAYSIDE NO. 2 CONDOMINIUM ASSOCIATION, INC., et al., Appellee/Cross-Appellant.
Nos. 92-1610, 92-2535.
District Court of Appeal of Florida, Third District.
March 29, 1994.
*998 Popham, Haik, Schnobrich & Kaufman and Bruce Charles King, Miami, for appellant.
Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane and Paul H. Field, Miami, for appellees.
Before NESBITT, JORGENSON and GERSTEN, JJ.
NESBITT, Judge.
The issue in this case is whether the damage done to a condominium unit as a result of the negligent maintenance or repair of a building's plumbing should be considered temporary  thus entitling the unit owner solely to the costs of repairing the unit, or permanent  thus permitting a claim for recovery not only of the costs of repair but also the diminished value of the unit resulting from the defendant's negligence. Because we conclude in the instant case that the nature of the injury and thus the damages recoverable were questions of fact, we find that the trial court erroneously excluded evidence of diminution in the unit's value, and reverse for a new trial on the issue of damages.
Bisque Associates of Florida, Inc. (Bisque) is the owner of a residential condominium unit in Towers of Quayside. Bisque rented out the unit continuously from 1987 through 1990. A series of water drainage backup problems occurred throughout 1990, ranging from minor backups or spillovers to a serious overflow which caused approximately $10,000 worth of property damage. Bisque brought a breach of contract and negligence claim against Towers of Quayside No. 2 Condominium Association, Inc. (Quayside), claiming that Quayside breached its contractual duty to maintain the plumbing, drainage and sewer lines, and that these chronic spillovers were due to Quayside's negligent maintenance or repair of the building's plumbing. Bisque sought damages for loss of rental income, and diminution of the unit's value, alleging that the market value of the unit had decreased because of Quayside's inability to prevent further periodic backups or overflows and Bisque's legal obligation to tell potential renters or purchasers about the plumbing problems.
At trial, Quayside requested that the judge exclude evidence of diminution of value, arguing that the plumbing difficulties were temporary, that any evidence concerning diminution of value would be speculative, and thus the proper measure of damages was cost of repair alone. Bisque proffered evidence that it could no longer rent or sell the unit for its market value, and argued that the permanency of injury was found in Bisque's continuing legal obligation to disclose the history of flooding to potential purchasers with no accompanying guarantee from Quayside that the problems had been fixed.
*999 The trial court granted Quayside's request, finding that Bisque had not proven a permanent injury to the property, and excluded Bisque's evidence of diminished value. The jury returned a verdict in favor of Bisque and awarded damages only for costs of repairs to the property.
The objective of compensatory damages is to make the injured party whole to the extent that it is possible to measure the injury sustained in terms of money. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). Under general principles of tort law, where the injury to real property is merely temporary, or where the property can be restored to its original condition at reasonable expense, the measure of damages should include the cost of repairs or restoration. See Keyes Co. v. Shea, 372 So.2d 493, 495-96 (Fla. 4th DCA 1979) (citing 25 C.J.S. Damages § 84 (1966)). Where the cost of repair exceeds the value of the property in its original condition, or where restoration is impracticable, the measure of damages is diminution of value. Id.; see also United States Steel Corp. v. Benefield, 352 So.2d 892, 894-95 (Fla.2d DCA 1977), cert. denied, 364 So.2d 881 (Fla. 1978).
Florida decisional law has not explicitly addressed the question whether the determination of permanent or temporary injury to real property is a matter of law to be resolved by the trial judge, or a question of fact to be presented to the jury. However, the courts of several other states have expressly held that whether an injury to real property is characterized as temporary or permanent is an issue of fact to be determined by the jury, if the pleadings permit. Burk Ranches, Inc. v. State, 242 Mont. 300, 790 P.2d 443 (1990); See, e.g., Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 72 A.2d 204 (1950); Ohio Collieries v. Cocke, 107 Ohio St. 238, 140 N.E. 356 (1923); see also 22 Am.Jur.2d Damages § 406 (1988). We follow this proposition.
In the case at bar, plaintiffs plead and sought to establish a permanent impairment of market value because of their alleged legal obligation to disclose to potential purchasers the recent adverse plumbing history of the condominium unit. Florida law requires the seller of a home to disclose those facts materially affecting the value of the property which are not readily observable and are not known to the buyer. Johnson v. Davis, 480 So.2d 625, 629 (Fla. 1985). This duty is equally applicable to all forms of real property, new and used. Id.
The plaintiffs proffered the testimony of Cheryl Kaufman, a real estate broker with experience marketing units in the same building as Bisque's unit. She would have testified to her inability to sell the unit for full market value after disclosure, because of the potential buyer's reluctance to pay full market price for a unit whose plumbing had a repeated tendency to clog and overflow. The matter of qualifications of an expert witness falls within the sound discretion of the trial court. Estate of Horowitz v. City of Miami Beach, 420 So.2d 936 (Fla. 3d DCA 1982). However, the record reveals that the court disallowed the plaintiff's expert witness testimony concerning diminution of value not because she was unqualified so to testify, but rather because the court had already decided that the physical injury to the property was not permanent in nature, and thus concluded that the jury should not hear testimony regarding diminution in value.
In all, there were ten or more plumbing backup events, and no evidence to suggest that the physical plumbing problem had been cured. In light of this tangible evidence relative to the intangible but potentially permanent diminution of the condominium's value as a result, the trial judge was incorrect to exclude testimony relating to the permanence of the injury. The jury should hear the evidence and can accord whatever weight to this evidence it sees fit.
In view of the foregoing, a new trial on damages should be had so that a jury may decide the nature of the injury and, accordingly, the measure and amount of damages due. Further, we find that Quayside's cross-appeal concerning the court's refusal to grant the condominium association's motion for a directed verdict is without merit.
*1000 The judgment below is reversed and the cause is remanded for a new trial on the issue of damages only.