665 So.2d 289 (1995)
KIDRON, INC., Appellant,
v.
Iliana CARMONA, etc., Appellees.
Nos. 94-429, 94-1168.
District Court of Appeal of Florida, Third District.
December 6, 1995.
*290 Richard A. Sherman and Rosemary B. Wilder; Gallagher & Perkins, for appellant.
Fuller, Mallah & Associates and Lawrence A. Fuller, for appellees.
Leesfield, Leighton, Rubio & Hillencamp and Robert S. Glazier, for the Academy of Florida Trial Lawyers as amicus curiae.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
NESBITT, Judge.
Kidron, Inc. appeals from a final judgment entered against it pursuant to a jury verdict in favor of appellees Iliana Carmona and her minor daughter, in Carmona's wrongful death action against Kidron. We reverse and remand.
Jorge Carmona, the appellee's husband, died instantly when he ran into the rear of a stalled Maas Brothers delivery truck, manufactured by Kidron. At trial, the driver of the stalled truck testified that on a clear, sunny day and on a dry, straight roadway, the decedent failed to observe the cars ahead of him change lanes to avoid the stalled truck, as well as failed to observe the truck's operating emergency flashers or the driver of the truck flagging other cars around the stalled vehicle. The driver of the truck testified that he tried to get the decedent's attention as he approached the stalled truck, but observed that the decedent was distracted, not looking ahead of him but instead looking to the left at a limousine in the other lane just before he crashed into the rear of the truck. Through the force of the impact, the decedent's small Toyota pickup was pushed under the larger truck's rear assembly, shearing through the passenger compartment of the smaller vehicle.
Carmona's wife entered into three separate settlements with three defendants, Maas Brothers, the owner of the Kidron truck, Tom McLaughlin, the driver of the Maas Brothers' truck, and General Motors Corporation, the manufacturer of the truck chassis that Kidron used in assembling its final product. Carmona and her child then proceeded with her suit against Kidron for negligence and strict liability in assembling the truck without a rear under-ride guard, which they allege would have prevented the deceased's vehicle from being forced under the larger truck's bed during the collision. Kidron answered, denying liability based on the company's compliance with all statutory specifications in the truck's assembly. The plaintiff later abandoned her claim of negligence, and the case against Kidron went to trial on the theory of strict liability only.
Kidron filed a motion for a directed verdict on the basis that the company had *291 not violated any federal or state statute or regulation concerning under-ride guards and that it did not owe the plaintiff any duty to assemble a truck that was safe in any rearend collision. Kidron also asserted the defense of Carmona's comparative negligence. The lower court denied Kidron's motion for directed verdict,[1] and struck the company's comparative negligence defense. The jury eventually returned a verdict in Carmona's favor. We conclude that Kidron's defense alleging Carmona's comparative negligence should have gone to the jury, and we reverse the order under review on that basis.
In Ford Motor Co. v. Evancho, 327 So.2d 201 (Fla. 1976), a negligence case, the supreme court faced the issue of whether automobile manufacturers could be held liable for defects in their cars which although playing no part in causing a primary automobile collision nevertheless increased or brought about injury to occupants through "secondary impacts." Evancho had brought an action for damages resulting from the death of her husband from injuries sustained as a passenger in an automobile collision. The decedent was riding in the rear seat of a 1970 Mercury when it collided with a parked automobile. It was alleged that as a result of the collision the decedent was thrown forward where he struck the back of the automobile's front seat. The mechanism designed to lock the front seat to its carrier rail allegedly failed and caused the right side of the front seat to be thrown forward, exposing sharp and pointed edges of the rail upon which the decedent fell, striking his head and sustaining injuries from which he died. The court concluded that manufacturers could be held liable under such circumstances and adopted the view expressed in Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968) "that the manufacturer must use reasonable care in design and manufacture of its product to eliminate unreasonable risk of foreseeable injury." Evancho, 327 So.2d at 204.
In West v. Caterpillar Tractor Co., 336 So.2d 80, 86-87 (Fla. 1976), the supreme court adopted the doctrine of strict liability and summarized the elements of that claim stating:
strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
West also makes clear that comparative negligence could be a defense in strict liability actions if based upon grounds other than failure of the user to discover the defect in the product or failure of the user to guard against the possibility of its existence. As West stated, lack of ordinary care can constitute a defense to strict tort liability. West, 336 So.2d at 91.
Thereafter, in Ford Motor Co. v. Hill, 404 So.2d 1049 (Fla. 1981), the court further clarified that strict liability may apply to both *292 defects in product design and manufacture, as well as to primary and secondary collisions.[2]See generally Theresa A. DiPaola and Edward M. Ricci, Evolution of Automobile Crashworthiness Doctrine in Florida, 69 Fla.Bar J., Oct. 1995, at 40, 44. However, because the contribution claim in Hill was withdrawn, Hill did not consider that issue. Thus the instant case presents the previously unaddressed question of whether the rules of comparative negligence should apply in a claim for strict liability in the context of a secondary collision, an issue of much discussion and dispute nationwide.
The widely accepted view, and the view we adhere to today, is that principles of comparative negligence should be applied in the same manner in a strict liability suit, regardless of whether the injury at issue has resulted from the primary or secondary collision. This view is based on the belief, as outlined in West, that fairness and good reason require that the fault of the defendant and of the plaintiff should be compared with each other with respect to all damages and injuries for which the conduct of each party is a cause in fact and a proximate cause. See § 768.81, Fla. Stat. (1993) (liability to be determined on the basis of fault of each participant).
Other decisions expressing this majority view that comparative fault should be applied in enhanced injury products liability cases include Whitehead v. Toyota Motor Corp., 897 S.W.2d 684 (Tenn. 1995) (citing Doupnick v. General Motors Corp., 225 Cal. App.3d 849, 275 Cal. Rptr. 715 (3rd Dist. 1990)); Dahl v. BMW, 304 Or. 558, 748 P.2d 77 (1987); Austin v. Ford Motor Co., 86 Wis.2d 628, 273 N.W.2d 233 (1979); Keltner v. Ford Motor Co., 748 F.2d 1265 (8th Cir.1984) (based on Arkansas law); Huffman v. Caterpillar Tractor Co., 645 F. Supp. 909 (D.Colo. 1986) (based on Colorado law), affirmed, 908 F.2d 1470 (10th Cir.1990); Trust Corp. of Montana v. Piper Aircraft Corp., 506 F. Supp. 1093 (D.Mont. 1981) (based on Montana law); Hinkamp v. American Motors Corp., 735 F. Supp. 176 (E.D.N.C. 1989) (based on North Carolina law), affirmed, 900 F.2d 252 (4th Cir.1990).
As noted in Whitehead v. Toyota, most legal scholars prefer the application of comparative fault analysis to claims for enhanced injuries. See, e.g., Victor E. Schwartz, Comparative Negligence, 3d Ed. Section 11-5(a) (1994). Because the underlying basis for design defect liability is fault, nothing unjust or illogical has been found in applying negligence-oriented reasonableness criteria to the determination of fault regardless of the strict liability label. See W. Prosser, Handbook on the Law of Torts ch. 96 (4th ed. 1971) (discussing the use of negligence principles in cases applying strict liability).
Plaintiff and amicus for the trial lawyers argue that a plaintiff's comparative fault should not be considered in the secondary collision context. They reason that comparing a manufacturer's fault in designing an unreasonably dangerous product to the fault of a negligent driver is like comparing "apples and oranges." Their position is that responsibility for an injury which is proved to have been incurred as a result of a secondary collision should be strictly the responsibility of the manufacturer. This, however, represents the minority view, and a position we decline to follow.[3]
In the instant case, evidence adduced at trial showed that on the day of the accident the weather was clear and sunny, there were no visibility obstructions, that thirty or forty vehicles preceded the decedent around *293 the stalled truck without incident, and that but for the decedent's own actions, there would have been plenty of time to avoid crashing into the truck. On the other hand, also given was expert testimony that had an under-ride guard been in place, Carmona's injuries would not have been fatal.
Accordingly, reversal and remand for retrial is required. At that time, the driver's responsibility will be considered along with the manufacturer's liability in designing a vehicle which may have enhanced injury on impact as well as "all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants." Fabre v. Marin, 623 So.2d 1182, 1185 (Fla. 1993). Thus, the trial judge shall give the jury instructions and proper verdict forms to allow calculation of Kidron's responsibility on the basis of its percentage of fault relative to any others whose actions combined to create the decedent's injuries, including those of the decedent himself.
On retrial, as Kidron correctly argues, net accumulations should reflect only those items as defined in section 768.18(5), Florida Statutes (1993). That section defines "net accumulations" as the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate. Lindsay v. Allstate Insurance Co., 561 So.2d 427, 428-29 (Fla. 3d DCA 1990), further provides that "ordinarily, any expense of maintaining a person's lifestyle, e.g., food, clothing, entertainment, and shelter, including expenses incidental to shelter, would be personal in nature." (emphasis added). Personal expenses are deducted from net business or salary income, for purposes of calculating net accumulations. § 768.18(5), Fla. Stat. (1993). Based on the foregoing, the value of the house and the $40,000 "repayment" Jorge Carmona made to his in-laws for living there were incorrectly included in calculating net accumulations as they are properly considered personal expenses "incidental to shelter." Id. Furthermore, the house cannot even be considered an investment for net accumulation purposes because the record shows that the house is not owned by the Carmonas but rather is titled in their parents' names.
Finally, we observe that the trial court did not abuse its discretion by allowing the plaintiff's expert witness to testify or by admitting the relevant video portions. See Bisque Assocs. v. Towers of Quayside No. 2 Condo. Ass'n, Inc., 639 So.2d 997 (Fla. 3d DCA 1994); Alford v. G. Pierce Woods Memorial Hosp., 621 So.2d 1380 (Fla. 1st DCA 1993). Kidron's remaining points on appeal are without merit.
Accordingly, the judgment is affirmed in part, and reversed in part, and remanded for a new trial.
NOTES
[1] Generally, absent clear statutory language that compliance with a statute or regulation precludes common law actions, such regulations are viewed as evidence to be considered by the trier of fact rather than an absolute bar to tort liability. See Freightliner Corp. v. Myrick, ___ U.S. ___, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). (In common law design defect claim against manufacturer of truck not equipped with antilock breaking system, where common law action did not conflict with federal law, it would not be preempted by implication.); Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968). (National Traffic and Motor Vehicle Safety Act is intended to be supplementary of and in addition to common law in negligence and product liability actions); Rucker v. Norfolk & W. Ry. Co., 77 Ill.2d 434, 33 Ill.Dec. 145, 396 N.E.2d 534 (1979) (Promulgation of federal regulations on railroad cars did not preclude imposition of tort liability according to state tort law standards more stringent than those in regulations.) Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417, 421 (Fla. 3d DCA), review denied, 479 So.2d 117 (Fla. 1985) (Admission of compliance with OSHA guardrail regulations is not dispositive on the question of state law negligence or products liability). Tort reform impacting this question is pending before the 104th Congress.
[2] The lack of a safety device may constitute a design defect for strict liability purposes. In Hobart Corp. v. Seigle, 600 So.2d 503 (Fla. 3d DCA), review denied, 606 So.2d 1165 (Fla. 1992), this court affirmed a final judgment against the manufacturer of a meat grinder designed without a child safety guard. Similarly, the court in Light v. Weldarc Co., 569 So.2d 1302 (Fla. 5th DCA 1990), held that a jury question existed as to whether protective work glasses lacking a safety device to prevent slipping were reasonably safe. See Products Liability in Florida, § 2.24 3 ed. (1995).
[3] The minority view is exemplified by Reed v. Chrysler Corp., 494 N.W.2d 224 (Iowa 1992) holding that a plaintiff's initial negligence in causing an accident should not be considered in apportioning damages based on injuries that are enhanced as a result of a defective product. See also Andrews v. Harley-Davidson, Inc., 106 Nev. 533, 796 P.2d 1092 (1990).