**Barry W. MEEKINS, Plaintiff,**

v.

**FORD MOTOR COMPANY, a Delaware corporation, Defendant.**

**C.A. No. 94C-04-028.**

Superior Court of Delaware, Kent County.

Submitted: Nov. 12, 1996.

Decided: March 5, 1997.

Reargument Denied: March 27, 1997.

---

21. *See especially* note 2 above.

Mary Sherlock, Brown, Shiels & Chasanov, Dover, for Plaintiff.

John D. Balaguer, White & Williams, Wilmington, for Defendant.

TERRY, Resident Judge.

### BACKGROUND

This is a case based on a claim for an enhanced injury as the result of an automobile accident. Plaintiff has filed a motion in limine to exclude the trial testimony of an accident reconstruction expert hired by the defendant who will offer testimony regarding plaintiff's negligence in causing the accident and the dynamics of the resulting injury which plaintiff claims to have sustained.

The automobile which the plaintiff Barry Meekins was driving collided with another vehicle at an intersectional collision. The air bag installed in Meekins' Lincoln Towncar deployed upon impact. Mr. Meekins sustained injuries to the fingers on his left hand. It is Meekins' position that his fingers were injured because of a defect in the air bag module design which caused them to be crushed against the steering wheel when the air bag inflated. He says that if it had not been for the defective air bag, he would have sustained no injury. Ford Motor Company, the manufacturer of the Lincoln, contends that the injury was not caused by the air bag

but rather by the violent turning of the steering wheel engendered by the collision.

It is against this background that the issue is presented. Ford says that the accident was caused because Meekins negligently failed to stop at a stop sign and it has raised comparative negligence as a defense. Meekins says that he did stop at the stop sign but even if he did not, and even if his negligence caused the accident, the court should not allow the defense of comparative negligence in an enhanced injury case.

### ENHANCED INJURY THEORY

■ Before discussing this issue it is necessary to examine the nature of an enhanced injury claim, also variously called a crashworthy claim or a second collision claim. The seminal case is *Larsen v. General Motors Corp.*,[1] where the Eighth Circuit considered a case involving a plaintiff who was in a collision where the impact caused the steering wheel to injure him. The argument was that the defectively designed steering wheel caused him to suffer injuries more severe than he otherwise would have suffered had there been no design defect. The *Larsen* court held that even though the design defect did not contribute to the cause of the collision, the plaintiff had a cause of action against the car's manufacturer to recover damages for "that portion of the damage or injury caused by the defective design over and above the damages or injury that probably would have occurred as a result of the impact or collision absent the defective design."[2] The court held that a manufacturer must expect that collisions are incidental to the normal use of an automobile, and therefore it must use reasonable care to design its product to avoid subjecting the user to an unreasonable risk of injury as the result of a collision. Thus, a manufacturer can be liable on negligence principles not only for a defect which causes a collision but also for one which enhances injuries received in a collision over and above those which would have been sustained absent the defect. As was stated by Thomas Harris in *"Enhanced Inju-*

---

1. *Larsen v. General Motors Corp.,* 8th Cir., 391 F.2d 495 (1968).

2. *Id.* at 502–503.

*ry Theory: An Analytic Framework"*[3] "enhanced injury liability is based on the premise that some objects, while they are not made for the purpose of undergoing impact, should be reasonably designed to minimize the injury-producing effect of such contact."[4]

The enhanced injury, crashworthiness or second collision claim, then, is one where the damages sought are not for injuries sustained in the original collision but for those sustained in the second impact where some design defect caused an exacerbated injury which would not have otherwise occurred as a result of the original collision. A good example of this situation would be where a vehicle collides with some object and the seat belt system fails thereby causing the occupant to be ejected from the vehicle. The occupant suffers severe injuries due to the ejection, whereas if he had been held in the car by a properly designed seat belt his injuries would have been non-existent or minor. Although the manufacturer of the car did not cause the collision, the manufacturer is liable for any enhanced injuries sustained by the occupant as a result of the failure of the negligently designed seat belt.

Delaware has recognized the viability of a claim for enhanced injuries in *General Motors Corporation v. Wolhar*[5] where the court said:

> In a crashworthiness claim, a plaintiff does not seek compensation for injuries received from the initial collision between the vehicle and another object. Instead, the plaintiff seeks compensation for injuries that result from the "second collision" which occurs when the plaintiff strikes the interior of the vehicle or is thrown from the vehicle. [citations omitted] Second collision injuries are often referred to as "enhanced injuries." [citations omitted] Thus, in a crashworthiness claim, the plaintiffs seek compensation for injuries over and above the injury that would have occurred as a result of the impact of collision, absent the vehicle's alleged negligently defective design.[6]

## DISCUSSION

Having sketched the parameters of the enhanced injury theory, we come to the issue in this case. Should the negligence of the plaintiff in causing the initial collision be compared with the negligence of the manufacturer in designing a product which causes enhanced injuries due to the so-called second collision.

### (a) Comparative negligence is not a defense.

There are cases and law review articles on both sides of the question. The view against applying comparative negligence in an enhanced injury situation is premised on the argument that it is illogical, because it results in comparing apples to oranges. Manufacturers should foresee the fact that some of the vehicles they manufacture will be involved in collisions. Therefore, they have a duty to make reasonable efforts to design a vehicle which will minimize injuries regardless of the cause of the collision.[7] The cause of the collision therefore has no bearing on the duty of the manufacturer to design a vehicle so as to minimize injuries from collisions which the manufacture knows will in many cases occur. "A negligent operator," according to Harris,[8] "is entitled to the same protection against unnecessary injury as the careful user of the same product is entitled." Other legal commentators have taken the

---

3. Thomas v. Harris, *Enhanced Injury Theory: An Analytic Framework*, 62 N.C.L.Rev. 643 (1984).

4. *Id.* at 646.

5. *General Motors Corp. v. Wolhar*, Del.Supr., 686 A.2d 170 (1996).

6. *Id.* at 172–173.

7. *See* Kerry A. Shad, B. Warren v. Colombo: North Carolina Recognizes Claim For Enhanced

Injury, 68 N.C.L.Rev. 1330 (1990) (Arguing that except for failure to repair or failure to use a safety device, plaintiff's contributing negligence in causing the initial impact should not provide a defense for an enhanced injury claim since a manufacturer has a duty to design a product that will minimize the injuries that result from the impact, regardless of the cause.)

8. Harris, *supra* note 3, at 674.

same position.[9]

The leading cases are grounded on the premise that since a manufacturer has a duty to expect that some of the vehicles it builds will be involved in collisions, it has a duty to take reasonable steps to minimize the injurious effect of an impact no matter how it occurs. In *Reed v. Chrysler Corp.*[10] the Iowa Supreme Court ruled that an affirmative defense based on intoxication could not be asserted against a person who was injured in a jeep rollover and who attributed his enhanced injuries to a defective roof design. The court observed:

> The theory, which presupposes the occurrence of accidents precipitated for myriad reasons, focuses alone on the enhancement of resulting injuries. The rule does not pretend that the design defect had anything to do with causing the accident. It is enough if the design defect increased the damages. So any participation by the plaintiff in bringing the accident about is quite beside the point.[11]

In *Mills v. Ford Motor Corp.,*[12] the court also refused to compare the plaintiff's negligence in causing the accident to defendant's negligence in designing a roof which collapsed during a rollover and allegedly enhanced the plaintiff's injuries. The court held that since the claim for the injuries arising out of the initial collision could be distinguished from the claim for the enhanced injuries arising out of the defective roof design, the driver and manufacturer did not unite together to create a single injury. Therefore the driver's negligence is not relevant. Another case, *Ford Motor Co. v. Hill,*[13] holds that it is not logical to compare the plaintiff's negligence in causing an accident to a manufacture's negligence in designing a vehicle which is not crashworthy, since a manufacturer should foresee that people will negligently crash its vehicles and get into collisions. The manufacturer has a duty to design against such an occurrence, so the negligence of an operator in causing the initial impact is not relevant to whether a design defect which did not cause the initial impact is the proximate cause of the enhanced damages.

An article in the Montana Law Review[14] by Robert C. Reichert contains a thorough analysis of the reasons why the comparative negligence of a plaintiff in causing the initial collision should not be compared to the negligence of a manufacturer whose defectively designed product caused an enhanced injury. Mr. Reichert asks: "[I]f all of a plaintiff's conduct is considered, how could liability be apportioned between a plaintiff and a manufacturer when a plaintiff is 100 percent at fault in causing the first collision?"[15] He goes on to explain that if the manufacturer in a second collision accident has no fault in causing the initial collision, there will be no recovery if the accident-causing fault of a plaintiff who is the sole cause of an accident is compared to that of the manufacturer. Since *Larsen* created the theory that a manufacturer is liable for enhanced injuries even though its negligence did not cause the first collision, the implication which flows from this premise is that "accident-causing fault cannot be compared with injury-enhancing fault."[16] To hold otherwise would "emasculate second collision liability."[17] In Mr. Reichert's view only a plaintiff's injury-en-

9. Theresa A. DiPaolu & Edward M. Ricci, *Evolution of the Automobile Crashworthiness Doctrine in Florida,* 69 Fla.B.J. 40 (1995) (However, these commentators do recognize the propriety of allowing a comparable negligence defense for any comparable fault casually related to the enhancement of the injures, such as failure to use a seat belt or failure to repair a known defect).

10. *Reed v. Chrysler Corp.,* Iowa Supr., 494 N.W.2d 224, 230 (1992).

11. *Id.* at 230.

12. *Mills v. Ford Motor Company,* M.D.Pa., 142 F.R.D. 271 (1990).

13. *Ford Motor Co. v. Hill,* Fla.Supr., 404 So.2d 1049 (1981).

14. Robert C. Reichert, *Limitations on Manufactures Liability in Second Collision Actions,* 43 Mont.L.Rev. 109 (1982).

15. *Id.* at 117.

16. *Id.* at 118.

17. *Id.* at 125.

hancing fault should be compared with a manufacturer's injury-enhancing fault.

### (b) Comparative negligence is a defense.

A number of reported decisions and articles support the proposition that the plaintiff's negligence in causing the original accident or first collision is to be compared to the manufacturer's negligence in providing a defective product which enhances a plaintiff's injury.[18] In fact, this approach has been deemed to be the majority view by the Tennessee Supreme Court in *Whitehead v. Toyota Motor Corp.*,[19] where a number of cases from other jurisdictions in accord with this principle are cited.

In *Montag v. Honda Motor Co., Ltd.*,[20] a woman negligently drove into the path of a train and was ejected when her seat belt failed. Plaintiff argued that since the enhanced injuries at issue would not have occurred but for the design defect in the seat belt, her comparative negligence in causing the initial accident is irrelevant and should not be compared to Honda's defective design of the seat belt. The Tenth Circuit Court of Appeals rejected that argument and said:

> In every crashworthiness case, the jury will be required to determine how much of a plaintiff's injuries resulted from the initial collision and how much of the injuries were the result of a second collision. In this case, the jury was required to determine which of Mrs. Montag's injuries resulted from her initial collision with the train and which of her injuries resulted from the allegedly defective seat belt. Thus, to an extent, the jury is already comparing the plaintiff's and the defen-

dant's behavior in order to determine causation. Requiring the jury to make a similar determination for the purpose of damages is certainly reasonable and consistent with Colorado's comparative fault statute.[21]

Many of the decisions on both sides of the issue reach a conclusion but fail to analyze the issue in depth. For instance, the court in *Kidron, Inc. v. Carmona*,[22] faced the same issue and simply wrote:

> Plaintiff and amicus for the trial lawyers argue that a plaintiff's comparative fault should not be considered in the secondary collision context. They reason that comparing a manufacturer's fault in designing an unreasonably dangerous product to the fault of a negligent driver is like comparing "apples and oranges." Their position is that responsibility for an injury which is proved to have been incurred as a result of a secondary collision should be strictly the responsibility of the manufacturer. This, however, represents the minority view, and a position we decline to follow.[23]

In *Hinkamp v. American Motors Corp.*,[24] the court acknowledged that it was aware of the contrary position expressed by others, citing to the Harris article.[25] It then went on to simply say that it was not willing to depart from "the long standing rule that a plaintiff's contributory negligence is a complete bar to recovery if it contributes to his injury."[26] According to the CCH Product Liability Reporter[27] the majority of the reported opinions hold that "any fault on the part of the plaintiff in causing the initial

**18.** *See* Hildy Bawbeer & Bard D. Borkon, *Recent Developments in Crashworthiness Litigation*, 450 Practicing Law Institute—Litigation 9 (1992) (Stating, that the modern trend in enhanced injury cases is to consider all the factors which contribute to the event which causes the injury); C.J. Poirier & Joel R. Mosher, *Comparative Fault and Crashworthiness Cases*, Case & Comment (September—October 1985).

**19.** *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684 (1995). ·

**20.** *Montag v. Honda Motor Corp., Ltd.*, 10th Cir., 75 F.3d 1414 (1996).

**21.** *Id.* at 1419.

**22.** *Kidron, Inc. v. Carmona*, Fla.Dist.Ct.App. 665 So.2d 289 (1995).

**23.** *Id.* at 292.

**24.** *Hinkamp v. American Motors Corp.*, E.D.N.C., 735 F.Supp. 176 (1989), *aff'd* 4th Cir., 900 F.2d 252 (1990).

**25.** Harris, *Supp* note 3.

**26.** 735 F.Supp. at 178.

**27.** CCH Product Liability Reporter § 3030 at 6903 (1995).

accident operated to bar or reduce recovery in the enhanced situation."

To illustrate the unsettled nature of this issue one has only to look at what happened to the first tentative draft of the "Restatement (Third) of the Law, Torts: Product Liability" which was circulated in 1994. Section 6 captioned "Defect–Related Increases in Harm" at Comment (f) proposed a rule whereby a "plaintiff's fault would not be taken into account in determining the defendant's liability for the defect-caused increase in harm." This rule was proposed in part on the theory that the crashworthy doctrine's purpose is to protect a plaintiff from increased harm arising from harm causing uses of a product which the manufacturer should have foreseen. Therefore if the risks created by a plaintiff's conduct (such as a collision) are within the expected risks that justify crashworthiness protection, the fact that a plaintiff's conduct creates the situation in which he has a right to expect protection should not bar or diminish his right to recover.

The proposed rule was subjected to scathing criticism in an article written by Michael Hoenig in the New York Law Journal [28] where he said that the Reporters:

> have buried a land mine within comment f that has little if any, basis in case law. In fact, the premise is opposed by the overwhelming weight of authority. [29]

He notes that in all other cases of product liability under Section 7 comparative fault is required as a proportional defense. Thus, in those cases where the tortfeasor causes all the harm, such as a single collision, the tortfeasor can take advantage of the plaintiff's comparative negligence. What logic is there to deny the comparative negligence defense

to a manufacturer who only caused part of the harm and who in many cases may be only minimally culpable? In both cases the plaintiff has contributed to causing his or her injury. He also notes that the mechanics of accidents and injuries also complicate things. The negligent plaintiff contributes to the severity of the accident and the severity of his own injuries depending on speed and other variables. [30] If the plaintiff's fault is a substantial factor in causing his injuries it should be taken into account.

Shortly thereafter in May 1994 at the annual meeting of the American Law Institute the draft of comment (f) was deleted and a new tentative draft of comment (f) was adopted which reversed the previous one and provided in part that "accordingly, the contributory fault of the plaintiff in causing the accident that resulted in increased harm should be taken into account in apportioning responsibility." [31] To date the draft has not been formally considered by the members of the American Law Institute.

**(c) Comparative negligence is a defense in Delaware.**

The Delaware Comparative Injury statute at 10 *Del.C.* § 8132 applies, on its face, to all actions and reads as follows:

> In all actions brought to recover damages for negligence which results in death or injury to person or property, the fact that the plaintiff may have been contributorily negligent shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the negligence of the defendant or the combined negligence of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion

**28.** Michael Hoenig, *The American Law Institute Restatement Draft,* 211 N.Y.L.J. 88. *See also* John M. Thomas, *"Comparative Fault in Crashworthiness or 'Second Collision' Cases".* 22 Prod. Safety & Liability, Rep. ((BNA) No. 20, 1994) (Citing the first tentative draft of the Restatement Third of Torts and arguing that the plaintiff's comparative fault should be taken into account in enhanced injury cases).

**29.** Hoenig, *supra* note 28 at 5.

**30.** *See* Heather Fox Vickles & Michael E. Oldham, *Enhanced Injury Should Not Equal Enhanced Liability,* 36 S.Tex.L.Rev. 417 (1995) (Arguing that the enhancement of the injuries runs hand in hand with the severity of the accident and any conduct which influences the severity of the accident thereby constitutes a proximate cause of the enhanced injury and should be compared with the manufacturer's fault).

**31.** Restatement (Third) of Torts: Products Liability, § 6, cmt. (f) (Tentative Draft No. 6, 1994).

to the amount of negligence attributed to the plaintiff.

No Delaware case discusses in any detail whether the comparative negligence of a plaintiff who causes the initial collision should be compared to the negligence of a manufacturer whose defectively designed product causes an enhanced injury as the result of what is sometimes referred to as the second collision. It does appear, though, that the Superior Court gave such an instruction in *Baynard et al. v. American Motors Corp., et al.*[32]

One must be careful to resist the temptation to view this issue in an isolated, over simplified way. Under some circumstances there may exist a clear line of demarkation between the injuries sustained as a result of the initial collision and those enhanced injures arising from a defective product. The case of a driver running into a tree at a slow speed and being ejected from the car as the result of a defective seat belt, for instance, might create a situation where it is clear that no injuries would have occurred without the ejection. Under those kinds of facts the injuries are so distinct that application of the rule barring evidence of the driver's comparative negligence might be workable, even if not advisable.

However, most cases are not so clear cut. For instance, in the case at bar the plaintiff's car was hit by another vehicle at an intersectional collision. A dispute exits as to whether the plaintiff stopped at the stop sign. A dispute could exist as to whether the driver of the other vehicle was negligent in a way which contributed to the collision. Plaintiff maintains that he would not have been injured at all except for the defective air bag which upon inflating crushed his fingers against the steering wheel. Ford denies that its air bag caused any of the injuries and says that the fingers were injured when the steering wheel spun around as a result of the collision. Here, it is obvious, we have potentially several acts of negligence, all of which might be proximate causes of the plaintiff's injuries.

Under this factual situation it would be difficult and confusing to instruct a jury that it should not consider the cause of the collision but only the cause of the enhanced injuries.

Another logical hurdle inherent in plaintiff's position is this. If a plaintiff negligently crashes his vehicle into a tree and suffers an enhanced injury because of a design defect in his car, plaintiff says that the manufacturer is liable for the enhanced injury regardless of the plaintiff's negligence in causing the collision. But what if a plaintiff collides with another vehicle and the driver of that vehicle is negligent? Assume also that the enhanced injuries caused to the plaintiff by a design defect in his car are clearly identifiable. Under ordinary rules of proximate cause the other driver would have potential liability for all of the plaintiff's injuries, but logically, following the enhanced injury theory of the plaintiff, only the manufacturer should have the liability because the other driver's conduct in causing the initial collision would not have caused the injury absent the design defect. Thus, carrying the theory to its logical conclusion, plaintiff should have no recovery against the other driver for his negligence in causing the collision. This result would run counter to well settled principles of tort law.

Our tort law has historically recognized the fact that there may be more than one proximate cause of an injury. Jurors have had no difficulty in apportioning fault equitably between multiple parties where negligent conduct is the proximate cause of injuries. The existence of other proximate causes of an injury does not relieve a plaintiff driver under Delaware's comparative negligence statute from responsibility for his own conduct which proximately caused him injury. Further, I can discern no policy reason why, in an enhanced injury case, the rule should be any different. Public policy seeks to deter not only manufacturers from producing a defective product but to encourage those who

---

**32.** *Baynard et al. v. American Motor Corp., et al.* Del.Super., C.A. No. 974, 1974, Longbardi, J. (May 30, 1979).

use the product to do so in a responsible manner.

Under plaintiff's theory, a jury would be instructed that it should not consider the negligence of the plaintiff in causing the accident. Rather the jury would be instructed to simply determine what injuries the plaintiff sustained over and above what he probably would have sustained had no defect existed and then award the plaintiff damages for the enhancement.

However, this approach ignores the well established rule of proximate cause. It is obvious that the negligence of a plaintiff who causes the initial collision is one of the proximate causes of all of the injuries he sustained, whether limited to those the original collision would have produced or including those enhanced by a defective product in the second collision.

The usual instruction which is given by Delaware Courts on comparative negligence makes it clear that the jury must compare negligence which is the proximate cause of the injury, not just negligence in the abstract. In the case at bar there might be negligence of the plaintiff causing his injury; negligence of the driver of the other vehicle causing his injury; and negligence of the manufacturer of the plaintiff's car causing his injury. In comparing everyone's negligence, the jury may consider many facts bearing on negligence as a proximate cause of the injury. For instance, plaintiff's negligence might have caused the initial collision and thereby constitute one of the proximate causes of the injury but the jury might conclude, after weighing all of the circumstances, that it was less than Ford's negligence in designing an air bag which was expected to protect the occupants of cars who would foreseeably be involved in similar types of collisions. The jury has wide latitude in comparing negligence and it does not automatically follow that if a plaintiff is 100% at fault in causing the initial collision, a jury will find that his negligence compared to a manufacturer's negligence in designing an air bag is greater than 50% and thus bars any recovery.

The comparative negligence of a plaintiff is a defense to a product liability action based on an enhanced injury theory and, consequently, the motion in limine to exclude the trial testimony of defendant's expert witness is *denied*.

## ON MOTION FOR REARGUMENT

*Submitted: March 24, 1997*

*Decided: March 27, 1997*

### *ORDER*

1. Plaintiff has filed a motion for reargument regarding the court's opinion in this matter dated March 5, 1997. In that Opinion I decided that the comparative negligence of a driver in causing the initial collision is an affirmative defense to a claim for enhanced injuries in a crashworthiness case.

2. Plaintiff says that *General Motors Corporation v. Wolhar*, Del.Supr., 686 A.2d 170 (1996) which was cited in my Opinion stands for the opposite proposition because it cites some cases from other jurisdictions which do not allow comparative negligence as a defense in a products liability case: in particular *LaHue v. General Motors Corp.*, 716 F.Supp. 407 (W.D.Mo.1989).

3. The issue in *Wolhar* was whether the seat belt defense could be used in defending a crashworthiness claim in view of the Delaware statute on the subject. The Supreme Court held that a seat belt defense can be raised in connection with the reasonableness of the seat design and on the issue of proximate cause of the enhanced injuries, i.e. the seat belt was an integral part of the vehicle's over-all safety design and failure to use it was a supervening cause of the enhanced injuries. The court cited *LaHue* for that limited purpose. Comments contained in the *LaHue* and related cases to the effect that contributory fault would not be relevant in a products liability case appear to derive from the strict product liability principles in effect in those states.

4. At any rate, I believe that the *Wolhar* case dealt with a different issue than the one in this case, and that the issue which we have here was not before the Delaware Supreme

Court in *Wolhar*. I do not read *Wolhar* as even containing dicta to the effect that a driver's contributory negligence in causing the initial collision is not an affirmative defense in an enhanced injury case and therefore conclude that the question is an open one in Delaware.

5. Plaintiff's motion for reargument is *denied*.

*IT IS SO ORDERED.*