805 So.2d 147 (2002)
Jessica Ann ROUGEAU
v.
HYUNDAI MOTOR AMERICA, et al.
No. 2001-CC-1182.
Supreme Court of Louisiana.
January 15, 2002.
*148 Robert W. Maxwell, Michael T. Pulaski, John B. Sanders, New Orleans, Pulaski, Geiger & LaBorde, Counsel for Applicant.
*149 Michael J. Mestayer, New Orleans, Leger & Mestayer; Brian J. Waid, Buras, James E. Shields, Gretna, Isabel B. Wingerter, Baton Rouge, Bubrig & Waid, Counsel for Respondent.
Chilton Davis Varner, Hugh F. Young, Jr., Colvin G. Norwood, Jr., New Orleans, Counsel for Product Liability Advisory Council Inc. (Amicus Curiae).
Russ M. Herman, Stephen J. Herman, James C. Klick, New Orleans, Counsel for Louisiana Trial Lawyers Assn. (Amicus Curiae).
VICTORY, Judge.[*]
We granted this writ to determine whether evidence of the plaintiff's failure to wear a seat belt is admissible in this automobile product liability case in light of La. R.S. 32:295.1(E). After reviewing the record and the applicable law, we hold that evidence of seat belt non-use may be admissible in a product liability case under certain limited circumstances; however, in this case, such evidence is inadmissible, and we affirm the judgment of the court of appeal.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Jessica Ann Rougeau ("Rougeau"), was injured in a single vehicle accident on December 25, 1990, when she drove through an intersection and struck a steel utility pole. She alleged that as she was proceeding south on Louisiana Highway 23, her vehicle, suddenly and without warning, veered sharply to the right, causing the vehicle to strike the pole head-on. She alleged that the week earlier, between December 14 and December 21, 1990, the vehicle was in the possession of Dickie's Master Craft for the purpose of making repairs, including a front-end alignment and straightening of the vehicle's front frame, that were associated with a prior automobile accident that had occurred on October 27, 1990. Rougeau sued Hyundai Motor America ("Hyundai") alleging that design defects in her 1988 Hyundai Excel caused her accident and her resultant debilitating injuries.[1] She also sued Dickie's Master Craft, alleging that it failed to properly repair the vehicle. She was not wearing her seat belt at the time of the accident.
On February 23, 1999, Rougeau moved to strike Hyundai's third party fault and non-use of seat belt affirmative defenses, relying on La. R.S. 32:295.1(E) At oral argument, the trial court denied plaintiffs motion and the court of appeal denied writs, finding that La. R.S. 32:295.1 was not applicable to a product liability action. Rougeau v. Hyundai, 99-1060 (La.App. 4 Cir. 5/11/99). This Court granted plaintiffs writ application and remanded the matter to the Fourth Circuit for briefing, argument and opinion. Rougeau v. Hyundai, 99-1538 (La.6/16/99), 745 So.2d 604. Upon remand, plaintiff raised constitutional challenges to La. R.S. 32:295.1(E) not previously raised in the district court. *150 Thus, the Fourth Circuit remanded the case to permit the district court to consider the constitutionality of La. R.S. 32:295.1(E) and its application to the facts of this case. Rougeau v. Hyundai, 99-1060 (La.App. 4 Cir. 10/20/99), 748 So.2d 39. The district court held a hearing on the constitutionality issues and denied plaintiff's constitutional challenge. The court of appeal granted plaintiff's writ application and reversed the district court judgment, holding that, because plaintiff was not making an allegation of uncrashworthiness or of a defect in the safety restraint system, to allow introduction of seat belt non-use would be in direct contravention of La. R.S. 32:295.1(E). Rougeau v. Hyundai, 00-2737 (La.App. 4 Cir. 3/23/01). We granted Hyundai's writ application to determine if, and under what circumstances, seat belt evidence may be used in a product liability action. Rougeau v. Hyundai, 01-1182 (La.6/22/01).

DISCUSSION
La. R.S. 32:295.1(E) provides:
In any action to recover damages arising out of the ownership, common maintenance, or operation of a motor vehicle, failure to wear a seat belt in violation of this Section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this Section shall not be admitted to mitigate damages. (Emphasis added.)
Courts in Louisiana have split on the issue of whether seat belt evidence is admissible in product liability cases under La. R.S. 32:295.1(E). The Second Circuit has held that seat belt non-use is not admissible in a crashworthiness[2] case. Wright v. Louisiana Power & Light Co., 33,202 (La.App. 2 Cir. 10/15/99), 752 So.2d 919, writ denied, 99-3232 (La.12/17/99), 752 So.2d 858. In McElroy v. Allstate Ins. Co., 420 So.2d 214 (La.App. 4 Cir.), writ denied, 422 So.2d 165 (La.1982), relying on pre-statutory jurisprudence providing that seat belt non-use was not admissible to prove contributory negligence, the Fourth Circuit Court of Appeal held that such evidence could be used to prove that the automobile's design as a whole was not defective. In Fedele v. Tujague, 98-0843 (La.App. 4 Cir. 4/15/98), 717 So.2d 244, where plaintiff alleged inadequate warnings regarding the airbag system, the Fourth Circuit held that a product liability claim is not a claim "arising out of the ownership, common maintenance, or operation" of a vehicle, such that seat belt evidence was admissible. In the instant case, the Fourth Circuit reasoned that its decision in Fedele was limited to cases in which a plaintiff alleges a defect in the safety restraint system, and that because this plaintiff is alleging defects in the front-end vibration and braking system of her vehicle, her injuries "clearly arose `out of the ownership, common maintenance, or operation'" of a vehicle, making seat evidence inadmissible. Rougeau v. Motor America, supra, op. at 151.[3]
*151 In this case, Rougeau alleges that her accident was caused by manufacturing, design, and warning defects of the "front-end vibration of her car," braking system, and tires.[4] In her original petition, she had alleged "failure to provide the aforesaid vehicle with sufficient crashworthiness features," but she withdrew this allegations in an amended petition. She argues that, as this is an action to recover damages arising out of her operation of a motor vehicle, evidence that she was not using her seat belt is prohibited under La. R.S. 32:295.1(E). Defendant argues that this evidence is admissible because a product liability action is not an action "arising out of the ownership, common maintenance, or operation of a motor vehicle," and that, even if it were, such evidence is only inadmissible to prove comparative fault or to mitigate damages.
The function of the statutory interpretation and the construction to be given to legislative acts rests with the judicial branch. Touchard v. Williams, 617 So.2d 885 (La.1993). The starting point in the interpretation of any statute is the language of the statute itself. Id. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. "When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10.
Initially, we must determine whether this product liability action is an action "arising out of the ownership, common maintenance, or operation of a motor vehicle" under the statute. If so, we must then determine whether the statutory prohibition against the introduction of seat belt non-use evidence to prove comparative fault or to mitigate damages also prohibits its use by Hyundai in this case to disprove causation or design defect.
The statutory phrase "arising out of the... operation" of a motor vehicle does not require that the defendant "operate" the vehicle; it simply requires that the underlying event arise from the "operation" of a vehicle. See Newman v. Ford Motor Co., 975 S.W.2d 147, 155 n. 26 (Mo.1998); but see LaHue v. General Motors Corp., 716 F.Supp. 407 (W.D.Mo.1989) ("arising out of the ownership, operation, or common maintenance" does not include design or construction); Hodges v. Superior Court, 21 Cal.4th 109, 86 Cal.Rptr.2d 884, 980 P.2d 433 (1999) (under the California uninsured motorist statute, "arising out of the operation or use" of a vehicle does not include product liability actions).
*152 Further, there is nothing in the legislative history to indicate that the drafters intended to limit the application of La. R.S. 32:295.1(E) to exclude product liability actions. La. R.S. 32:295.1 was originally enacted in 1985 in response to Federal Motor Vehicle Safety Standard (FMVSS) 208, part of the National Traffic and Motor Vehicle Act, which required states to enact mandatory seat belt use laws.[5]
*153 In the next legislative session following the National Highway Transportation Safety Administration enactment, Rep. Gary Forster introduced House Bill 697 as an attempt to meet the requirements of FMVSS 208. The original bill mandated that every driver, and front seat passenger under certain conditions, wear seat belts or be subject to a fine upon conviction, but did not contain any provisions for civil litigation penalties. The engrossed and reingrossed bills, as well as the final enrolled legislation included an amendment offered by the Louisiana Trial Lawyers Association, which provided as follows:
E. In any action to recover damages arising out of the ownership, common maintenance, or operation of a motor vehicle, failure to wear a safety belt in violation of this Section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this Section may be admitted to mitigate damages, but only when the party offering such evidence proves that (1) there was a functioning safety belt available to the injured party; (2) the injured party failed to use a safety belt; (3) the failure to use a safety belt contributed to the party's injuries; (4) the use of a safety belt would have reduced the injured party's damages in an amount equal to or in excess of the amount of mitigation sought. In no event shall the award of damages be reduced by more than two percent for the nonuse of a safety belt.
La. R.S. 32:295.1(E) (as enacted in 1985). This statute met the requirement of FMVSS 208 that the violation of the mandatory seat belt use law may be used in mitigating damages.
In 1988, La. R.S. 32:295.1(5) was amended by 1988 H.B. 1158 to delete the section allowing the introduction of evidence in mitigation of damages, as follows:
E. In any action to recover damages arising out of the ownership, common maintenance, or operation of a motor vehicle, failure to wear a safety belt in violation of this Section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this Section may shall not be admitted to mitigate damages. but only when the party offering such evidence proves that (1) there was a functioning safety belt available to the injured party; (2) the injured party failed to use a safety belt; (3) the failure to use a safety belt contributed to the party's injuries; (4) the use of a safety belt would have reduced the injured party's damages in an amount equal to or in excess of the amount of mitigation sought. In no event shall the award of damages be reduced by more than two percent for the nonuse of a safety belt.
1988 H.B. 1158 (additions and deletions marked). In explaining the amendment, Representative DeWitt stated only that "if you do not wear a safety belt, you would not be in mitigation in law suits for damages with insurance." Minutes of Meeting, House Committee on Transportation, Highways and Public Works, Monday, May 16, 1988, p. 9.
After debate on this amendment, one representative stated that "as he understood the amendment, if there is an accident and a defense is raised of contributory or comparative negligence because of failure to wear a seat belt, then this amendment would provide that that defense could not be raised." Minutes of Meeting, House Committee on Transportation, Highways and Public Works, Monday, May 16, 1988, p. 12. The Act passed and La. R.S. 32:295.1(E) remains in this form today.
In 1999, there was an attempted amendment of La. R.S. 32:295.1(E) to allow the *154 introduction of seat belt non-use in the determination of comparative negligence, apportionment of fault, or mitigation of damages. 1999 House Bill 936 and Senate Bill 861. In introducing the bill in committee, Senator Dardenne explained:
Presently under Louisiana law it is inadmissible in evidence to establish that an individual was not wearing a seat belt at the time they were involved in an accident. It seems to me that that ought to be a matter of fact that could be considered by a fact findera judge or a jury. And this bill very simply would change the law to make it clear that you could provide testimony in a court that an individual was not wearing a safety belt and that that evidence could be used to determine the individual's comparative negligence to apportion fault or to mitigate that individual's recovery based on the fact that they did not have the seat belt on.
Senate Judiciary A Committee Minutes, April 13, 1999. Senator Hainkel explained the present law as follows: "You can't offer evidence today of the fact that failure to use a seat belt caused the injury. All this does is let you offer evidence that failure to obey the lawthat particular lawcaused the injury." Id. The 1999 Legislature chose not to amend La. R.S. 32:295.1, leaving in place the legislature's choice that failure to wear a seat belt not be used to determine comparative fault, to apportion fault, or to mitigate damages.
We find no indication in the legislative history that the Legislature intended to exclude product liability actions from the scope of La. R.S. 32:295.1. In fact, had it wished to so, it could have done so explicitly, as have other states. See Ark.Code Ann. § 27-37-703 (Michie 1987 & Supp. 1997); Tenn.Code Ann. § 55-9-604 (Supp. 1997) (each statutorily recognizing that, in product liability cases only, seat belt evidence shall be admissible when it relates to proximate cause and to whether injuries sustained in an automobile accident were in fact caused by the failure to wear a seat belt). Further, applying the statute to all such actions, including product liability actions, will avoid the inconsistent result warned against by plaintiff, that in a case such as this, where the plaintiff has sued the automobile manufacturer and the vehicle repair shop, the automobile manufacturer would be able to introduce seat belt evidence but the automobile repairer would not as the action against it would arise out of the "common maintenance" of the vehicle, which is clearly covered under the statute. This result also moots plaintiff's equal protection argument.[6] Finally, it is consistent with the federal provisions that were to apply to "any subsequent litigation to recover damages for injuries...." See note 5, infra (citing 49 Federal Register No. 138, at p. 28997).
Having found that La. R.S. 32:295.1 applies to all actions for damages arising out of the ownership, common maintenance, or operation of a vehicle, including product liability actions, we now seek to determine whether the statute's prohibition against the introduction of seat belt evidence to prove comparative fault and mitigation of damages also prohibits the use for which Hyundai seeks to introduce such evidence, i.e., to prove injury causation and lack of design defect.
*155 To reach this determination, we look first to the language of the statute. Under the maxim expressio unius et exclusio alterius, when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional. State v. Louisiana Riverboat Gaming Com'n, 94-1872, 94-1914 (La.5/22/95), 655 So.2d 292. La. R.S. 32:295.1(E) clearly provides that failure to wear a seat belt "shall not be considered evidence of comparative negligence" and "shall not be admitted to mitigate damages." La. Evid. C. art. 402 states that all relevant evidence is admissible, except as otherwise provided by other legislation. There are numerous other relevant issues in any automobile accident case, any of which the Legislature could have chosen to include within the prohibition of the statute, but they did not. Instead, the Legislature included only comparative negligence and mitigation of damages and thus, intended that seat belt evidence would be admissible for any other relevant purpose. Defendant argues that evidence of seat belt non-use is relevant to prove that the automobile did not contain a design defect, and that, if it did, the defect did not cause plaintiff's injuries. Thus, we must determine whether the express prohibition in La. R.S. 32:295.1(E) affects seat belt use evidence when relevant to the issues of causation and design defect.[7]
*156 While there is no express prohibition against causation evidence in La. R.S. 32:295.1(E), there is an express prohibition against allowing seat belt evidence to show comparative fault, which implicitly affects the causation issue. La. C.C. art. 2323, which applies to product liability claims, provides in part:
A.... If a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory *157 of liability, regardless of the basis of liability.
. . .
La. C.C. art. 2323 (emphasis added). Comparative fault necessarily involves an analysis of whether the plaintiff's injuries resulted from his or her own fault, i.e., whether he or she caused his or her injuries, in whole or in part. Thus, by prohibiting evidence of comparative fault, the legislature has effectively eliminated a defendant's ability to defend against the causation element based on seat belt non-use. The Legislature apparently was aware of this when certain legislators sought to amend the statute in 1999, expressing that the present law did not allow evidence that failure to wear a seat belt caused the injury. See Senate Judiciary A Committee Minutes, April 13, 1999. Thus, we find that La. R.S. 32:295.1(E) prohibits Hyundai from introducing evidence that Rougeau was not wearing her seat belt to prove that this failure caused her injuries.[8]
Hyundai also argues that evidence that seat belts were present in the car but that Rougeau was not wearing a seat belt is also relevant to show that the automobile's overall design was not defective, or that a specific aspect of the automobile's design was not defective. There is no express prohibition in La. R.S. 32:295.1(E) against allowing an automobile manufacturer to defend against a design defect claim by showing that the design of the vehicle did not contain a defect, nor does the existence of a design defect have anything to so with the plaintiff's fault in not wearing a seat belt. Further, "allowing a plaintiff to challenge an automobile's overall safety scheme without allowing evidence of whether the plaintiff, in fact, used such safety features is patently unfair." Carter, Brett, R., "The Seat Belt Defense in Tennessee: The Cutting Edge," 29 Univ. of Memphis L.Rev. 215, 224-25 (Fall 1998).
The Mississippi Supreme Court has fashioned what we believe are appropriate limitations on the use of seat belt evidence to disprove design defect. In Estate of Hunter v. GMC, 729 So.2d 1264 (Miss. 1999), plaintiffs alleged that the seats in their automobile were defective, which caused their injuries in an automobile accident. The Mississippi statute at issue provided that "[f]ailure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence, nor shall the violation be entered on the driving record of any individual." Miss.Code Ann. § 63-2-3. In spite of this broad prohibition, the court held:
... evidence of seat belt non-use may constitute relevant evidence in some (but by no means all or even most) cases, so long as (1) the evidence has some probative value other than as evidence of negligence; (2) this probative value is not substantially outweighed by its prejudicial effect (See Miss. R. Evid. 403) and is not barred by some other rule of evidence and (3) appropriate limiting instructions are give to the jury, barring the consideration of seat belt non-usage as evidence of negligence. *158 729 So.2d at 1268. The court cited with approval the following limiting instruction given in DePaepe, supra:

You may consider the fact that plaintiff's 1984 Buick Regal was equipped with functional seat belts in accordance with federal and Illinois law for the purpose of determining whether the overall design of the vehicle was reasonably crash-worthy. However, you may not consider plaintiff's use or non-use of seat belts in determining, one, whether the plaintiff was at fault for his own injuries and/or, two, whether plaintiff's use or non-use of his seat belt caused his injury.
Id. (citing DePaepe, supra, 33 F.3d at 745). The Court relied on the policy considerations that automobile manufacturers should be encouraged to design cars in a crash-worthy manner in spite of the fact that drivers and passengers often fail to wear their seat belts. Id.
Under the limitations in Hunter relevant to the admissibility of seat belt evidence, the first issue is whether the evidence of seat belt non-use has some probative value other than as negligence. This case involves a close issue, because plaintiff has removed the crashworthiness[9] claims from her petition, and is alleging only that the brakes, tires, and front-end vibration system of her automobile were defectively designed. However, in contrast to a crashworthiness case, or a case where the plaintiff alleges a defect in the safety restraint system, evidence that this vehicle was equipped with seat belts but that she was not wearing hers is not relevant to disprove this plaintiffs specific design defect allegations, i.e., that the brakes, tires, and front-end vibration system were defectively designed. Because this evidence is only relevant to show her own negligence in causing her injuries, the evidence is inadmissible in this case under La. R.S. 32:295.1(E). Thus, even though her failure to wear a seat belt may have caused her to sustain worse injuries than she would have had she followed the mandatory seat belt law, and even though the defendant may ultimately have to shoulder the burden of these increased injuries, the Legislature has chosen this result and we must enforce the statute as written.

CONCLUSION
La. R.S. 32:295.1(E), prohibiting evidence of seat belt non-use in cases "arising out of the ownership, common maintenance, or operation" of a motor vehicle, applies to product liability actions involving allegations of design defect in an automobile. Further, the prohibition against introducing the evidence to show comparative fault or to mitigate damages also prohibits the use of such evidence to prove that the plaintiff's seat belt non-use caused her injuries. Such evidence is only admissible in a product liability action if: (1) it has probative value for some purpose other than as evidence of negligence, such as to show that the overall design, or a particular component of the vehicle, was *159 not defective; (2) its probative value is not outweighed by its prejudicial effect or barred by some other rule of evidence; and (3) appropriate limiting instructions are given to the jury, barring the consideration of seat belt non-usage as evidence of comparative negligence or to mitigate damages.
Under the facts of this case, wherein the plaintiff alleges that defects in the braking and front-end vibration system caused her to strike a steel utility pole, resulting in debilitating injuries, evidence that she was not wearing her seat belt is irrelevant for any purpose other than to show that her seat belt non-use caused her injuries. It is not relevant to show that her brakes, tires or front-end vibration system were not defectively designed. As such, its admissibility is prohibited by La. R.S. 32:295.1(E), which prohibits such evidence to show comparative fault or to mitigate damages.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
KNOLL, J., concurs and assigns reasons.
KNOLL, J., concurring.[**]
I concur in the majority opinion to note the extensive dicta the opinion recites concerning crashworthiness jurisprudence developed in other states. The issues raised under crashworthiness cases were neither before us nor considered by us. Accordingly, I concur in the result of the majority opinion.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] Rougeau alleges the following design and failure to warn defects in her original and first amending petition: failure to properly design, engineer, and/or manufacture the aforesaid 1988 Hyundai Excel; failure to equip the aforesaid vehicle with appropriate vibration eliminating devices; failure to provide the vehicle with appropriate and compatibly designed tires; failure to warn of the dangers associated with a known potential defect, or to warn of the dangers associated with improper wheel alignment; such further and other acts or neglect, fault, omission, or commission to be proven at the trial of this cause; and the manufacturing and design and warning defects alleged in her original petition relative to the front end vibration of her car and the braking system.
[2] "Crashworthiness" cases are product liability cases concerning a manufacturer's duty to use reasonable care in designing automobiles. See Larsen v. General Motors Corp., 391 F.2d 495, 503 (8th Cir.1968). Ordinarily, the injuries occur when, in an accident, occupants collide with the interior of their cars or are thrown from the cars and collide with something else. The cases also are known variously as "second collision" cases and "enhanced injury" cases. They focus on injuries attributable to alleged design defects, rather than initial impacts.

Contrary to the holding in Wright, most courts throughout the country have held that seat belt evidence is admissible in crashworthiness cases. See footnote 7, infra.
[3] The case cited by plaintiff for the proposition that seat belt evidence is inadmissible in cases involving the DOTD, and thus is not limited to vehicle-to-vehicle collisions, Keeth v. State through Dept. of Public Safety and Transp., 618 So.2d 1154 (La.App. 2 Cir.1993), was actually an ordinary two-vehicle accident case, involving the DOTD only because a police officer was a driver involved in the accident.
[4] Under the LPLA, to prove a design defect, a plaintiff must show:

(1) that the vehicle is defective or unreasonably dangerous because:
(a) there existed an alternative design for the vehicle that was capable of preventing the claimant's damage; and
(b) the likelihood that the vehicle's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the vehicle; and
(2) that such defective or unreasonably dangerous condition proximately caused claimant's damages.
La. R.S. 9:2800.54 and 9:2800.56.
[5] In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act whereby the Department of Transportation was directed to "reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." Accordingly, the Department of Transportation established the National Highway Transportation Safety Administration (NHTSA) to oversee the enactment and enforcement of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1392. Part of the Motor Vehicle Safety Act specifically addressed the issue of seat belts, and particularly their design and performance criteria. See FMVSS 208, 49 C.F.R. § 571.208. In 1970, NHTSA amended FMVSS 208 to require that all new cars be equipped with automatic restraint systems for the front seat occupants. Because of protest from the automobile industry, on October 23, 1981, NHTSA rescinded that Order and reopened the issue for public consideration.

On October 19, 1983, NHTSA issued its Notice of Proposed Rulemaking concerning occupant protection relative to fully automatic front seat restraint systems. See 48 Federal Register No. 203 at pp. 48622-48641. As NHTSA stated therein, because seat belt use levels were so low, mandatory passive restraints were perceived as the most effective means to meet the Congressional purpose of the Motor Vehicle Safety Act. However, because of public concern over mandating specific restraint systems for automobiles, NHTSA considered numerous options to increase occupant safety before reaching its final decision that "[e]ffectively enforced state mandatory seatbelt use laws (MULs) will provide the greatest safety benefits most quickly of any of the alternatives, with almost no additional cost." 49 Federal Register No. 138, at pp. 28962-29010, July 17, 1984.
Accordingly, Federal Motor Vehicle Safety Standard 208 was amended to provide the following requirements for mandatory passive restraints:
As a result of these conclusions, the Department has decided to require automatic occupant protection in all passenger automobiles based on a phased-in schedule beginning on September 1, 1986, with full implementation being required by September 1, 1989, unless, before April 1, 1989, two-thirds of the population of the United States are covered by MULs meeting specified conditions. More specifically, the rule would require the following:
Passenger cars manufactured for sale in the United States after September 1, 1986, will have to have automatic occupant restraints on the following schedule:
Ten percent of all automobiles manufactured after September 1, 1986.
Twenty-five percent of all automobiles manufactured after September 1, 1987. Forty percent of all automobiles manufactured after September 1, 1988.
One-hundred percent of all automobiles manufactured after September 1, 1989.
The requirement for automatic occupant restraints will be rescinded if MULs meeting certain specific conditions are passed by a sufficient number of states before April 1, 1989 to cover two-thirds of the population of the United States.
. . .
In order for the passive restraint requirement to be rescinded, however, the Department of Transportation mandated that the state MULs meet certain minimum criteria:
. . .
(2) A prohibition of waivers from the mandatory use of seatbelts, except for medical reasons;
(3) An enforcement program that complies with the following minimum requirements:
(a) Penalties. A penalty of $25 (which may include court costs) or more for each violation of the MUL, with a separate penalty being imposed for each person violating the law.
(b) Civil Litigation Penalties. The violation of the MUL by any person when involved in an accident may be used in mitigating damages sought by that person in any subsequent litigation to recover damages for injuries resulting from the accident. This requirement is satisfied if there is a rule of law in the State permitting such mitigation.
. . .
Id. at 28997.
[6] Plaintiff argues that "without the due process and equal protection provisions, automatic disregard of La. R.S. 32:295.1(E) in product liability litigation, to the exclusion of other tort plaintiffs, creates a suspect class of plaintiffs who are treated less favorably than all other plaintiffs and creates a suspect class of defendants (product liability defendants) who are treated more favorably than other defendants."
[7] A survey of other jurisdictions' decisions under similar statutes, prohibiting the use of seat belt evidence to prove comparative fault or to mitigate damages, shows that the vast majority of jurisdictions allow the introduction of seat belt evidence in product liability cases, if offered other than to show comparative fault or to mitigate damages. Virtually all these cases are "crashworthiness" cases, where the plaintiff is claiming, not that a defect caused her accident, but that a product defect caused her to sustain worse injuries than he or she would have suffered had the defect not existed.

In LaHue, supra, where the applicable statute prohibited seat belt evidence to prove comparative fault but allowed it to mitigate damages up to 1%, the federal district court pointed out that, in a products liability action, evidence of seat belt non-use could be relevant because "[i]f evidence shows that all or part of the injury is attributable to something other than a design defect, the critical element of causation is missing." LaHue, supra at 416. "In that instance, a defendant is not, and should not be, liable for harm which that defendant did not cause by way of a design defect." Id. The court also allowed such evidence on the issue of design defect, because "the jury should consider the vehicle's overall design, including safety features, in order to determine the crashworthiness issue, and, thus, whether the vehicle was defective in design" and "[e]vidence of product safety features specifically designed to prevent the injuries complained of is entirely relevant to this issue." Id. at 417-18. Further, the court held that in a design defect case, "the entire automobile is a product. The design of individual components within this case need not be considered in a vacuum because safety features such as seat belts are a part of the overall design." Id.
Likewise, other crashworthiness cases governed by statutory language similar to the Louisiana statute, prohibiting seat belt evidence to show comparative negligence or to mitigate damages, have also held seat belt evidence to be admissible to prove causation or to defend against the allegations of design defect. See Barron v. Ford Motor Co. of Canada, Ltd., 965 F.2d 195 (7th Cir.), cert. denied, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992) (where the plaintiff alleged Ford's use of tempered rather than laminated glass in a sunroof caused her to be thrown from the car, the court found that North Carolina's seat belt rule, which was later codified, did not preclude all seat belt evidence, but only evidence of non-use in assessing whether the plaintiff had been negligent in failing to mitigate the consequences of her accident); DePaepe v. General Motors Corp., 33 F.3d 737 (7th Cir.1994) (where the plaintiff alleged that the sun visor/header system of her car was defective, the court held that seat belt evidence could be used to show that its design of the sun visor/header system was not unreasonably dangerous because the vehicle also was equipped with a functional restraint system that would prevent an occupant from striking those components in an accident); Whitehead v. American Motors Sales Corp., 801 P.2d 920, 928 (Utah 1990) (finding seat belt evidence admissible under similar Utah statute on the question of the vehicle's overall design); Gardner v. Chrysler Corp., 89 F.3d 729 (10th Cir.1996) (where plaintiff alleged her seat was defective, the court held that by forbidding such evidence only to establish comparative negligence or to mitigate damages, the legislature intended to allow such evidence if introduced for any other purpose, such as to defend allegations of a defect or to establish its presence in the vehicle; when read as a whole the statute "reflects the legislature's intent to make their use mandatory but to minimize any penalty for nonuse, and to isolate their nonuse from any connotation of fault").
Some courts have also allowed seat belt evidence to prove causation in product liability cases not involving crashworthiness claims and in the face of statutory prohibitions broader that the one contained in the Louisiana statute. In MacDonald v. General Motors Corporation, 784 F.Supp. 486 (M.D.Tenn. 1992), the plaintiff alleged that his automobile's brakes were defective, which caused his accident. The federal court, interpreting a Tennessee statute providing that "[i]n no event shall failure to wear a seat belt be considered as contributory negligence, nor shall such failure to wear a safety belt be admissible as evidence in a trial of any civil action," held that in spite of this prohibition, evidence that the plaintiff was not wearing his seat belt was admissible to prove proximate cause, an essential element of a products liability claim. The court held that "[t]o prevent General Motors from introducing evidence that the Plaintiffs' injuries were the result of being thrown from the van would be taking a step toward the imposition of absolute liability." 784 F.Supp. at 499. The court rejected plaintiffs' argument that this was allowing prohibited evidence in through the back door, explaining:
At first glance, General Motors' causation argument seems like a subterfuge to avoid the strictures of § 604. As this Court has explained, however, GM's ability to introduce seat belt evidence depends on the theory for which its introduction is sought. The doctrines of contributory negligence and assumption of the risk are intertwined with causation issues. Contributory negligence is merely the negligence act of a plaintiff which is the proximate cause of the plaintiff's injury. Admitting evidence only with respect to causation may complicate the issue for the jury, but it is by no means an insurmountable problem. Courts often admit evidence for one purpose that cannot be considered by the jury for other purposes (e.g. the state of mind exception to the general rule against hearsay). This Court can easily admonish the jury that seat belt evidence may be considered only on the question on proximate causation.
Id. at 500; see also GMC v. Wolhar, 686 A.2d 170 (Del.1996) (under common law of Delaware, evidence of seat belt non-use admissible in an action alleging that defective brakes caused an accident to prove overall design and causation); but see Milbrand v. Daimler-Chrysler Corp., 105 F.Supp.2d 601 (E.D.Tex. 2000) (where plaintiff alleged a defective rear axle caused her accident and the Texas statute prohibited the use of seat belt non-use in a civil action for any purpose, the court held that evidence of plaintiff's seat belt non-use was inadmissible to prove causation or any other issue).
[8] This holding is consistent with the apparent policy considerations in enacting La. R.S. 32:295.1(E), whereby the legislature has chosen to prohibit attributing any fault to a driver who is injured in a car accident because he or she was not wearing a seat belt, either to show that he or she was comparatively negligent for not wearing a seat belt or to diminish the amount of damages he or she is entitled because of seat belt non-use. The statute appears to reflect the public policy to mandate seat belt use in order to protect the public, but to minimize any civil penalties for non-use, and to isolate seat belt non-use from any connotation of fault in civil litigation.
[9] In a crashworthiness case or a case involving allegations of a defective safety restraint system, wherein a plaintiff alleges he or she sustained worse injuries in an accident than he or she would have if not for the defect, evidence that the plaintiff did not use the safety restraint systems provided by the manufacturer is highly relevant to determine whether the automobile as a whole was defectively designed. In such cases, this evidence has probative value other than as evidence of negligence, and the court must then consider the other limitations, i.e., that the probative value of the evidence is not substantially outweighed by the prejudicial effect or the evidence is not barred under any other evidentiary rule, and that appropriate limiting instructions are given to the jury, barring the consideration of seat belt non-use as evidence of comparative negligence or to mitigate damages.
[**] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.